UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY GLASNER, DWIGHT SEEELEY, PAMELA SEELEY, ARIJ ALI, and MALINA ALI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN ECONOMY INSURANCE COMPANY, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF INDIANA,<br><br>Defendants. | Case No. 21-cv-11047-DJC |

<u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                                                                               **March 8, 2024**

**I.     Introduction**

Plaintiffs Jeffrey Glasner, Dwight Seeley, Pamela Seeley, Arij Ali and Malina Ali (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, filed this lawsuit against Defendants American Economy Insurance Company ("AEIC"), Liberty Mutual Personal Insurance Company ("LMPICO") and Safeco Insurance Company of Indiana ("Safeco Indiana") (collectively, "Defendants"), alleging breach of contract (Count I) and seeking declaratory judgment and relief (Count II). D. 4. Defendants have moved to dismiss the first amended complaint ("FAC") for lack of standing under Fed. R. Civ. P. 12(b)(1) and, alternatively, to strike class allegations under Fed. R. Civ. P. 12(f). D. 63. Plaintiffs have moved for leave to

1

file a proposed second amended complaint ("PSAC") to add Thomas Larsen ("Larsen"), as trustee of The Larsen Family Revocable Trust, as an additional named class representative under Federal Rule of Civil Procedure 15(a)(2), or alternatively, to have him intervene under Fed. R. Civ. P. 24. D. 70.

For the reasons stated below, the Court DENIES Defendants' 12(b)(1) motion to dismiss the FAC or, alternatively, to strike Plaintiffs' class allegations. D. 63. The Court ALLOWS Plaintiffs' motion for leave to file the PSAC and DENIES the portion of that motion that sought to intervene as moot. D. 70.

## II. Standards of Review

### A. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

When confronted with a Rule 12(b)(1) motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995), cert. denied, 515 U.S. 144 (1995)). The Court may widen its gaze, however, and look beyond the pleadings to determine subject matter jurisdiction. Martínez-Rivera v. Commonwealth of Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the court can "rely on facts outside of the pleadings" to decide a Rule 12(b)(1) motion). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy, 45 F.3d at 522 (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).

Standing is a jurisdictional issue, see P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012), and, accordingly, challenges to standing are properly considered under Rule 12(b)(1). See Kolancian v. Snowden, 532 F. Supp. 2d 260, 261 (D. Mass. 2008).

2

B.  **Rule 15(a)(2) Motion for Leave to Amend**

Under Fed. R. Civ. P. 15(a)(2), "leave to amend is to be 'freely give[n] when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting Resol. Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)). Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases." Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (internal quotation marks and citation omitted). "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." Bos. & Me. Corp. v. Town of Hampton, 987 F.2d 855, 868 (1st Cir. 1993), overruled on other grounds by Educadores, Puertorriqueños en Acción v. Hernández, 377 F.3d 61 (1st Cir. 2004).

III.  **Factual Background**

The following facts are alleged in Plaintiffs' FAC, D. 4, and are taken as true for the purposes of considering Defendants' motion to dismiss.

Glasner is a citizen and resident of Arizona and owns a residence in Scottsdale, Arizona. Id. ¶ 8. At all relevant times, AEIC insured Glasner's residence for direct physical loss to buildings and other structures located on the insured premises, except as specifically excluded or limited by the insurance policy. Id. ¶¶ 21–23. On or about August 20, 2020, a storm caused "accidental direct physical loss" to Glasner's residence. Id. ¶ 24. Glasner notified AEIC of the damage and submitted a claim against his insurance policy. Id. ¶ 26. AEIC determined that the loss was covered. Id. ¶ 27.

3

Dwight and Pamela Seeley are married, citizens and residents of Ohio, and own a residence in Dublin, Ohio. Id. ¶ 9. At all relevant times, Safeco Indiana insured the Seeleys' residence for direct physical loss to buildings and other structures located on the insured premises, except as specifically excluded or limited by the insurance policy. Id. ¶¶ 30–32. On or about July 12, 2020, a storm caused "accidental direct physical loss" to the Seeleys' residence. Id. ¶ 33. The Seeleys notified Safeco Indiana of the damage and submitted a claim against their insurance policy. Id. ¶ 35.

Arij and Malina Ali are married, citizens and residents of Illinois, and own a residence in Hanover Park, Illinois. Id. ¶ 10. At all relevant times, LMPICO insured the Alis' residence for direct physical loss to buildings and other structures located on the insured premises, except as specifically excluded or limited by the insurance policy. Id. ¶¶ 38–40. On or about July 28, 2020, wind caused "accidental direct physical loss" to Alis' residence. Id. ¶ 41. The Alis notified LMPICO of the damage and submitted a claim against their insurance policy. Id. ¶ 43. LMPICO determined that the loss was covered. Id. ¶ 44.

As alleged, Defendants were required to pay the actual cash value ("ACV") of the property damaged as part of the Plaintiffs' losses, as opposed to the replacement cost value ("RCV") of same. Id. ¶ 1. Whereas ACV payments are made prospectively, i.e., prior to the policyholder undertaking repairs to damaged buildings and structures, RCV payments are made retrospectively, after repairs have been completed. Id. ¶ 2. Plaintiffs assert that Defendants calculated ACV under the "replacement cost less depreciation" ("RCLD") methodology, allowing Defendants to calculate the full amount of labor and materials necessary to repair or replace the property and to then deduct from that amount depreciation. See id. ¶ 3.

To calculate Plaintiffs' ACV payments, Defendants used Xactimate®, a computer software program designed to assist insurers with RCLD calculations. Id. ¶¶ 49, 54. Xactimate® generates price estimates based on a series of inputs, including the dimensions of the damaged property, the damaged portion of the damaged property, and other objective criteria like the age or condition of the roofing, siding or other damaged building materials. Id. ¶¶ 50, 56–57. Xactimate® breaks down each step of the repair process into separate "line items"; the insurance adjuster then checks or unchecks boxes associated with these line items to account for, and ultimately deduct, depreciation. Id. ¶¶ 58–59. As alleged, some of these checkboxes, such as "Depreciate Material," "Depreciate Removal," and "Depreciate Overhead and Profit," are "labor items," i.e., costs associated with any labor necessary to repair the damaged property. Id. ¶ 59. There are also two checkboxes corresponding to labor items for steep and high roofs, one for labor costs associated with the removal of old roofing materials and the other associated with installation costs. Id. ¶ 60.

Plaintiffs allege that Defendants used these checkboxes to withhold labor costs from their ACV payments. Id. ¶ 55, 61. This so-called "labor depreciation" thus resulted in smaller ACV payments.[1] See id. ¶ 63. Accordingly, Plaintiffs assert Defendants' labor depreciation practices have resulted in the underpayment of ACV claims (and breaches of contracts) injuring the residents of twelve states, including Plaintiffs' homes states of Arizona, Ohio and Illinois, as well as nine other states: Connecticut, Kentucky, Maryland, Mississippi, Tennessee, Utah, Vermont, Virginia and Wisconsin. Id. ¶ 74.

---

[1] Glasner and the Seeleys' insurance policies do not define ACV so as to permit labor depreciation, but the FAC's allegations as to the Alis do not specifically indicate whether their policy defined ACV in this manner. D. 4 ¶¶ 29, 37; see id. ¶¶ 38–45.

IV.     **Procedural History**

On June 24, 2021, Glasner, individually and on behalf of all others similarly situated, filed a complaint against AEIC.  D. 1.  On July 2, 2021, the other Plaintiffs joined Glasner, again individually and on behalf of all others similarly situated, in filing the operative FAC against Defendants.  D. 4.  Defendants moved to dismiss the FAC as to the class claims for lack of standing under Fed. R. Civ. P. 12(b)(1) or, in the alternative, to strike class allegations under Rule 12(f).  D. 63.  Plaintiffs subsequently moved for leave to file the PSAC to add Thomas Larsen ("Larsen"), as trustee of The Larsen Family Revocable Trust, as an additional named class representative under Fed. R. Civ. P. 15(a)(2), or, alternatively, have him intervene under Rule 24.  D. 70.[2]  This Court heard the parties on the pending motions and took the matters under advisement.  D. 99.

V.      **Discussion**

   A.    **Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Standing**

Defendants argue, under Rule 12(b)(1), that the FAC should be dismissed as to all claims arising in the nine states where Plaintiffs do not reside and were not injured, including Connecticut, Kentucky, Maryland, Mississippi, Tennessee, Utah, Vermont, Virginia and Wisconsin.  D. 64 at 10–18.  Defendants contend that Plaintiffs lack standing as to these claims under Article III of the United States Constitution.  Id.  Plaintiffs maintain that all elements of Article III standing have been met, D. 68 at 8–9, and argue that federal circuit courts, including the First Circuit, have held that multistate class claims are not precluded by Article III of the United States Constitution, that

---

[2] This case was initially in another session of this Court, where oral argument was held on October 11, 2023.  D. 95.  On December 15, 2023, the matter was re-assigned to this session.  D. 96.  This Court set a date for oral argument on December 19, 2023, D. 97, and held the hearing on January 31, 2024.  D. 99.

6

resolution of the predominant legal issue will be the same in each state and that the relevant state laws are substantively the same. Id. at 9–20.

"The federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case." United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007). Under Article III, "[a]n actual case or controversy exists when the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted." Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). To satisfy the personal stake requirement, three elements must be met: "[1] a would-be plaintiff must demonstrate a concrete and particularized injury in fact, [2] a causal connection that permits tracing the claimed injury to the defendant's actions, and [3] a likelihood that prevailing in the action will afford some redress for the injury." Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)); see Katz v. Pershing, LLC, 672 F.3d 64, 71–72 (1st Cir. 2012).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 338 n.6 (2016) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 n.20 (1976)). "However, the question whether allegations of personal injury are sufficient to satisfy the constitutional requirements 'is not so clear cut with respect to putative class representatives in class action disputes.'" In re Lantus Direct Purchaser Antitrust Litig., 512 F. Supp. 3d 106, 120 (D. Mass. 2020) (quoting In re Nexium (Esomeprazole) Antitrust Litig., 968 F. Supp. 2d 367, 403–04 (D. Mass. 2013)).

In In re Asacol Antitrust Litigation, 907 F.3d 42, 48 (1st Cir. 2018), the First Circuit clarified how putative class representatives may establish standing to bring claims on behalf of class members whose claims arise under the laws of states within which no named plaintiff resides or suffers injury. There, the named plaintiffs filed a class action alleging violations of consumer protection and antitrust laws of twenty-five states and the District of Columbia, id. at 44–45; they did not reside in twenty-two of these states, but other class members did. Id. at 48.

The First Circuit first explained that the analysis of Article III standing cannot be collapsed into Rule 23 considerations. Id. The court noted that it has trained its "Article III focus in class actions on 'the incentives of the named plaintiffs to adequately litigate issues of importance to them.'" Id. at 48–49 (quoting Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 770 (1st Cir. 2011)). "This focus is in many respects simply an application to aggregate litigation of the basic Article III requirement that a plaintiff possess 'such a personal stake in the outcome of the controversy as to assure . . . concrete adverseness.'" Id. (quoting Baker, 369 U.S. at 204). The First Circuit noted that the "pertinent question" is not whether there are differences between the claims of the class members and the claims of the class representatives, but instead whether "the differences that do exist" are "the type that leave the class representatives with an insufficient personal stake in the adjudication of the class members' claims." Id. at 49. Accordingly, a court must examine whether "the claims of the named plaintiffs parallel those of the putative class members in the sense that, assuming a proper class is certified, success on the claim under one state's law will more or less dictate success under another state's law." Id.

Applying these principles, the First Circuit held that the class representatives had Article III standing to assert out-of-state claims. Id. The First Circuit emphasized that the parties agreed

8

that the plaintiffs' liability theories as to monopolization were limited to a construction of state antitrust laws that paralleled the federal Sherman Antitrust Act and that, "[u]nder those parallel laws," all plaintiffs had a "substantial and shared interest in proving that the higher price was the result of unlawful monopolizing conduct that is redressable by an award of damages." Id. Because the relevant laws were "materially the same," the First Circuit concluded that any minor differences had "no relevant bearing on the personal stake of the named plaintiffs in litigating the case to secure such judgments." Id.

Here, the parties dispute whether the laws of Arizona, Ohio and Illinois, where the class representatives' claims arose, and the laws of the nine states where their claims did not arise—Connecticut, Kentucky, Maryland, Mississippi, Tennessee, Utah, Vermont, Virginia and Wisconsin—are sufficiently parallel to establish Article III standing. Plaintiffs assert that under the laws of Arizona, Illinois, Kentucky, Mississippi, Ohio and Tennessee, labor depreciation is a breach of contract where there is no provision in an insurance policy that expressly permits the practice when calculating ACV payments pursuant to the RCLD methodology. D. 68 at 10–11; see D. 68-8 at 2; D. 68-13 at 2. Plaintiffs also note that Connecticut and Vermont prohibit labor depreciation pursuant to statutory or regulatory law and point to public statements in which Virginia's Bureau of Insurance takes the position that labor is not an appreciable item. D. 68 at 10–11. Plaintiffs appear to concede that Maryland, Utah and Wisconsin have yet to address the issue but insist that they will advance similar legal arguments on behalf of policyholders in these states. Id.

Defendants acknowledge that there is support for Plaintiffs' assertion that, as in Plaintiffs' home states of Arizona, Illinois and Ohio, labor depreciation may support a breach of contract claim under the laws of Kentucky, Mississippi and Tennessee. D. 69 at 4–5. Consistent with

9

Plaintiffs' position, Defendants add that Maryland, Utah and Wisconsin do not prohibit labor depreciation. Id. at 4. Defendants, however, disagree with Plaintiffs' characterization of the laws of Connecticut, Vermont and Virginia. Id. at 4–5.

Given that there exists some legal authority prohibiting labor depreciation in Kentucky, Mississippi and Tennessee, and the proffered support for this position, Plaintiffs have demonstrated that their interests in proving that Defendants impermissibly depreciated labor costs from ACV payments are sufficiently aligned with the interests of these unnamed plaintiffs to establish Article III standing. See Hicks v. State Farm Fire & Cas. Co., 751 F. App'x 703, 708–10 (6th Cir. 2018) (holding that, under Kentucky law, an insurance policy that did not define ACV depreciation to include labor was ambiguous as to same and, thus, had to be construed in the insured's favor); Mitchell v. State Farm Fire & Cas. Co., 954 F.3d 700, 705–07 (5th Cir. 2020) (concluding that, under Mississippi law, "Actual Cash Value" was ambiguous as to labor depreciation and, thus, ambiguity had to be resolved in favor of the insured); Lammert v. Auto-Owners (Mut.) Ins. Co., 572 S.W.3d 170, 179 (Tenn. 2019) (explaining that, in Tennessee, "labor may not be depreciated when the insurance company calculates the actual cash value of a property using the replacement cost less depreciation method").

As to the remaining states of Connecticut, Maryland, Utah, Vermont, Virginia and Wisconsin, the parties seem to agree, at least, that courts have not conclusively addressed whether depreciation of labor costs is unambiguously permitted where there is no provision in an insurance policy that expressly permits the practice. See D. 68 at 10–11; D. 69 at 4–5. Even if courts in these states have not considered this narrow issue, however, Defendants cannot deny that "breach of contract" is a legal claim in each state and that the elements of these "parallel laws" are "materially the same." See Asacol, 907 F.3d at 49; Meyers v. Livingston, Adler, Pulda,

Meiklejohn & Kelly, P.C., 87 A.3d 534, 540 (Conn. 2014) (noting that the "elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages"); Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001) (holding that "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation")[3]; Am. West Bank Members, L.C. v. State, 342 P.3d 224, 230–31 (Utah 2014) (explaining that "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages"); Ianelli v. U.S. Bank, 996 A.2d 722, 728 (Vt. 2010) (reasoning that a breach of contract requires proof of an agreement, a breach of that agreement and damages); Navar, Inc. v. Fed. Bus. Council, 784 S.E.2d 296, 299 (Va. 2016) (noting that "the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation"); Pagoudis v. Keidl, 988 N.W.2d 606, 612 (Wis. 2023) (recognizing that "[t]he elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages").

These states, Connecticut, Maryland, Utah, Vermont, Virginia and Wisconsin, also recognize the general principle that ambiguities in an insurance policy should be construed against the insurer. See Conn. Ins. Guar. Ass'n v. Fontaine, 900 A.2d 18, 24 (Conn. 2006) (noting that

---

[3] The Court of Appeals of Maryland has noted that "[i]t is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages." Taylor, 365 Md. at 175. This deviation does not undermine the inclusion of the claims of class members from Maryland on Article III grounds, however, because "the named plaintiffs certainly have a substantial stake in proving" the remaining, parallel elements of their breach of contract claims, see Asacol, 907 F.3d at 50, which would sustain a breach of contract claim in Maryland.

11

"our interpretation of ambiguous policy language in favor of coverage under the doctrine of contra proferentem has become near axiomatic in insurance coverage disputes"); Sullins v. Allstate Ins. Co., 667 A.2d 617, 619 (Md. 1995) (recognizing that "if no extrinsic evidence or parol evidence is introduced, or if the ambiguity remains after consideration of the extrinsic or parol evidence . . . , it will be construed against the insurer as the drafter of the policy")[4]; Utah Farm Bureau Ins. Co. v. Crook, 980 P.2d 685, 687 (Utah 1999) (holding that "[a]mbiguities are construed against the drafter—the insurance company—and in favor of coverage"); Chamberlain v. Metro Prop. & Cas. Ins. Co., 756 A.2d 1246, 1248 (Vt. 2000) (noting that "[a]ny ambiguity in an insurance contract must be construed in favor of the insured"); Va. Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009) (holding that "if disputed policy language is ambiguous and can be understood to have more than one meaning, we construe the language in favor of coverage and against the insurer"); Hirschhorn v. Auto-Owners Ins. Co., 809 N.W.2d 529, 535 (Wis. 2012) (explaining that "ambiguities are construed against the insurer, the drafter of the policy").[5]

---

[4] Although "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer," the Court of Appeals of Maryland has emphasized that, absent extrinsic evidence resolving the ambiguity, such ambiguity is resolved against the insurer as "the drafter" of the policy, Sullins, 667 A.2d at 619; here, Plaintiffs allege that "Defendants drafted the insurance policies at issue," so this distinction is immaterial here. See D. 4 ¶ 89.

[5] Defendants argue that the laws of Connecticut, Kentucky, Maryland, Mississippi, Tennessee, Utah, Vermont, Virginia and Wisconsin are materially different, citing federal district courts in other circuits that have concluded same. D. 64 at 14–18 (citing Brown v. Auto-Owners Ins. Co., No. 1:21-cv-02597, 2022 WL 2442548 (N.D. Ill. June 1, 2022); Rivers of Life Int'l Ministries v. GuideOne Ins. Co., No. 1:22-cv-01114-STA-jay, 2022 WL 17261845 (W.D. Tenn. Nov. 18, 2022)). However, in Brown, the court did not analyze the relevant state laws through the First Circuit's framework set forth in Asacol, which is binding on this Court. Although the court in Rivers of Life International Ministries cited Asacol, the decision does not include an in-depth multistate analysis explaining why the relevant laws are too materially different for plaintiffs to establish Article III standing and instead relied upon Brown to support that proposition. Defendants' citation to Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc., 333 F.R.D. 390, 414 (M.D. Tenn. 2019), see D. 64 at 13, 15–16, 18, is similarly unavailing; there, the Court applied Asacol and held that

Given this uniformity in the law as to the claims raised by the putative class, the named Plaintiffs' incentives are sufficiently aligned with the interests of the unnamed class members to establish Article III standing. See Asacol, 907 F.3d at 48–49. Accordingly, dismissal of the FAC under Rule 12(b)(1) is not warranted.[6]

### B. Plaintiffs' Rule 15(a)(2) Motion to Amend

Plaintiffs have moved for leave to file the PSAC under Rule 15(a)(2), proposing to add Thomas Larsen, as trustee of The Larsen Family Revocable Trust, as an additional named class representative. D. 70. The PSAC alleges that Larsen is a resident of Arizona, that he owns a residence in Mesa, Arizona and that at all relevant times LMPICO insured his residence for "direct physical loss to the buildings and other structures located on the insured premises, except as specifically excluded or limited" by the insurance policy. D. 71-1 ¶¶ 11, 48–50. The PSAC further asserts that Larsen's residence suffered damage, that LMPICO determined the loss was covered by the policy and that, after Larsen made a claim, LMPICO calculated its ACV payment obligation to Larsen pursuant to the RCLD methodology. Id. ¶¶ 51, 53–55.

---

plaintiffs had standing to bring claims given similarities in the state statutes underlying their claims.

[6] Defendants argue, alternatively, that the Court should strike Plaintiffs' class allegations as to these nine state claims under Rule 12(f). D. 64 at 18–20. "Motions to strike under Rule 12(f) are generally disfavored," U.S. Sec. & Exch. Comm'n v. Nothern, 400 F. Supp. 2d 362, 364 (D. Mass. 2005), and rarely granted absent a showing of prejudice to the moving party. See Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 398 (D.R.I. 1998). A court should "'delet[e] the complaint's class allegations' when 'it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis.'" Camey v. Force Factor, LLC, No. CV 14-14717-RWZ, 2016 WL 10998440, at *2 (D. Mass. May 16, 2016) (quoting Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013)). However, in light of the Court's ruling that Plaintiffs' claims may proceed on a classwide basis, and the commonality of breach of contract claims as discussed above, the Court denies Defendants' request to strike Plaintiffs' class allegations.

Defendants oppose Plaintiffs' motion for leave to amend the FAC, arguing that the proposed amendment would be futile. D. 75. Defendants assert that, because Larsen submitted an RCV claim, not an ACV claim, and received payment for the amount actually spent to complete repairs, "any alleged ACV underpayment is moot as a matter of law" and the proposed amendment is, therefore, futile. Id. at 6. Plaintiffs do not deny that that Larsen received an RCV payment but instead argue that his claim is actionable because he is entitled to prejudgment interest for the period of withholding. D. 83 at 5. As alleged in the PSAC, "policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost 'time value' of money during the period of withholding, i.e., interest on the amounts improperly withheld, for the time-period of withholding." D. 71-1 ¶ 80.

Disputes over prejudgment interest—which is recoverable in Arizona, see, e.g., Ariz. Rev. Stat. Ann. § 44-1201—are actionable in the class action context. See, e.g., Merrill Tenant Council v. U.S. Dep't of Hous. & Urb. Dev., 638 F.2d 1086, 1095 (7th Cir. 1981) (permitting class action to proceed where plaintiffs sought damages in the amount of interest on rental security deposits); In re MF Glob. Holdings Ltd. Inv. Litig., 1 Civ. 7866(VM), 2015 WL 4610874, at *8–9 (S.D.N.Y. July 20, 2015) (certifying class seeking prejudgment interest and lost opportunity cost where "Proposed Class members already received 100 percent of their unpaid net equity claims as part of a prior settlement"); Arnold v. State Farm Fire & Cas. Co., 2:17-cv-00148-TFM-C, 2020 WL 6879271, at *6–7 (S.D. Ala. Nov. 23, 2020) (certifying labor depreciation class notwithstanding the named plaintiff's "status as an 'interest only' claimant," which was "common throughout the class"). Accordingly, Larsen's breach of contract claim and his declaratory judgment claim (to declare Plaintiffs' reading of the contract proper) is not "moot" as a result of any subsequent RCV payment. Discerning no other grounds for denial, Plaintiffs' motion to amend is allowed.

## VI. Conclusion

For these reasons, the Court DENIES Defendants' 12(b)(1) motion to dismiss the FAC and DENIES Defendants' Rule 12(f) motion, alternatively, to strike Plaintiffs' class allegations. D. 63. The Court ALLOWS Plaintiffs' motion for leave to file the PSAC and DENIES the portion of that motion that sought to intervene. D. 70. Accordingly, Plaintiffs may file the second amended complaint consistent with this ruling (i.e., adding Larsen, as trustee of The Larsen Family Revocable Trust, as an additional named class representative).

**So Ordered.**

/s Denise J. Casper
United States District Judge