## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **JEFFREY GLASNER, DWIGHT SEEELEY, PAMELA SEELEY, ARIJ ALI, and MALINA ALI, individually and on behalf of all others similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiffs** | ) ) | |
| **v.** | ) ) ) | **Case No. 21-cv-11047-DJC** |
| **AMERICAN ECONOMY INSURANCE COMPANY, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, and SAFECO INSURANCE COMPANY OF INDIANA,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |
| **JANICE FASSINA, STEVEN EDELEN, KENNETH BLACK, CRAIG DOBBS and NANCY DOBBS individually and on behalf of all others similarly situated,** | ) ) ) ) ) ) | |
| **Plaintiffs** | ) ) | |
| **v.** | ) ) ) | **Case No. 22-cv-11466-DJC** |
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, LM INSURANCE CORPORATION, and LIBERTY INSURANCE CORPORATION,** | ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**MEMORANDUM AND ORDER**

CASPER, C. J.                                                    February 12, 2026

## I.    Introduction

Plaintiffs Jeffrey Glasner ("Glasner"), Dwight Seeley and Pamela Seeley ("the Seeleys"), Arij Ali and Malina Ali ("the Alis") and Thomas Larsen ("Larsen") (collectively, the "Glasner Plaintiffs"), individually and on behalf of all others similarly situated, filed this action against Defendants American Economy Insurance Company ("AEIC"), Liberty Mutual Personal Insurance Company ("LMPIC") and Safeco Insurance Company of Indiana ("Safeco Indiana") (collectively, the "Glasner Defendants"), alleging breach of contract (Count I) and seeking declaratory judgment and relief (Count II). Glasner, D. 1; Glasner, D. 101. The Glasner Plaintiffs have now moved to certify a class of AEIC, LMPIC and Safeco Indiana policyholders under Fed. R. Civ. P. 23. Glasner, D. 126. On September 12, 2022, Plaintiffs Janice Fassina ("Fassina"), Steven Edelen ("Edelen"), Kenneth Black ("Black"), Craig Dobbs and Nancy Dobbs (the "Dobbs") (collectively, the "Fassina Plaintiffs"), individually and on behalf of all others similarly situated, filed a parallel action against Defendants Liberty Mutual Fire Insurance Company ("LMFIC"), Safeco Insurance Company of America ("Safeco"), LM Insurance Corporation ("LM") and Liberty Insurance Corporation ("LIC") (collectively, the "Fassina Defendants"), alleging breach of contract (Counts I-II) and seeking declaratory judgment and relief (Count III). Fassina, D. 1; Fassina, D. 72.[1] The Fassina Plaintiffs have moved to certify a class of LMFIC, Safeco and LM policyholders under Fed. R. Civ. P. 23(c)(4). Fassina, D. 111. The Glasner Defendants and Fassina Defendants (collectively, "Defendants"), respectively, have also moved

---

[1] The Fassina parties previously stipulated to dismissal of the claims brought by Plaintiffs Heather Tryon and Joshua Tryon. Fassina, D. 95.

for partial summary judgment as to the individual claims of Plaintiffs Larsen, the Alis, the Seeleys, Black and the Dobbs under Fed. R. Civ. P. 56(a).  Glasner, D. 134; Fassina, D. 119.

Given the substantially similar motions brought by the Glasner Plaintiffs and the Fassina Plaintiffs (collectively, "Plaintiffs") and Defendants, the Court considers these motions together for purposes of class certification and partial summary judgment.  For the reasons stated below, the Court ALLOWS the Glasner Plaintiffs' motion for class certification, Glasner, D. 126, ALLOWS the Fassina Plaintiffs' motion for class certification, Fassina, D. 111, ALLOWS the Glasner Defendants' motion for partial summary judgment, Glasner, D. 134, and ALLOWS the Fassina Defendants' motion for partial summary judgment in part and DENIES same in part, Fassina D. 119.

## II.    Standards of Review

### A.    Rule 23 Class Certification

A class action may be certified only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The Court must also determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"[T]he district court must undertake a 'rigorous analysis' to determine whether plaintiffs me[e]t the four threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3)'s two additional prerequisites."  In re Nexium

Antitrust Litig., 777 F.3d 9, 17 (1st Cir. 2015) (internal citations omitted); see Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). Plaintiffs bear the burden of proving that class certification is justified. Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987). When "plaintiffs have made their initial showing, defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing." Nexium, 777 F.3d at 27. "[D]istrict courts have broad discretion to grant or deny class certification." McCuin v. Sec'y of Health & Hum. Servs., 817 F.2d 161, 167 (1st Cir. 1987).

### B.   Summary Judgment

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are drawn primarily from Plaintiffs' second amended complaints ("SACs"), <u>Glasner</u>, D. 101; <u>Fassina</u>, D. 72, Defendants' statement of undisputed material facts in support of summary judgment, <u>Glasner</u>, D. 136; <u>Fassina</u>, D. 121, Plaintiffs' additional statement of facts, <u>Glasner</u>, D. 143; <u>Fassina</u>, D. 128, Defendants' response, <u>Glasner</u>, D. 152; <u>Fassina</u>, D. 137, and the exhibits and documents referenced therein.

### A.    <u>Plaintiffs' Insurance Claims</u>

Glasner, a citizen and resident of Arizona, owns a residence in Arizona that was insured, at all relevant times, by AEIC for property damage.  <u>Glasner</u>, D. 101 ¶¶ 8, 22-23.  The Seeleys, citizens and residents of Ohio, own a residence in Ohio that was insured, at all relevant times, by Safeco Indiana.  <u>Id.</u> ¶¶ 9, 31-32.  The Alis, citizens and residents of Illinois, and Larsen, a citizen and resident of Arizona, respectively own residences in their respective home states that were insured, at all relevant times, by LMPIC.  <u>Id.</u> ¶¶ 10-11, 39-40, 48-49.  Fassina, a citizen and resident of Alabama, owns a residence in Alabama that was insured, at all relevant times, by LMFIC for property damage.  <u>Fassina</u>, D. 72 ¶¶ 9, 25-26.  Edelen, a citizen and resident of Maryland, owns a residence in Maryland that was, at all relevant times, insured by Safeco for property damage.  <u>Id.</u> ¶¶ 10, 36-37.  Black, also a citizen and resident of Maryland, owns a residence in Maryland which was, at all relevant times, insured by LM for property damage.  <u>Id.</u> ¶¶ 11, 46-47.  The Dobbs, citizens and residents of Arizona, own a residence in Arizona that was, at all relevant times, insured by LIC for property damage.  <u>Id.</u> ¶¶ 12, 54-55.  All Defendants are affiliated with Liberty Mutual Insurance Group ("Liberty").  <u>Glasner</u>, D. 101 ¶ 15; <u>Fassina</u>, D. 72 ¶ 18.

Between September 2019 and May 2021, Plaintiffs' residences were damaged, <u>Glasner</u>, D. 101 ¶¶ 25, 34, 42, 51; <u>Fassina</u>, D. 72 ¶¶ 28, 38, 48, 56, and each Plaintiff submitted a timely covered claim against their respective insurer, <u>Glasner</u>, D. 101 ¶¶ 27-28, 35-36, 44-45, 53-54; <u>Fassina</u>, D. 72 ¶¶ 30-31, 40-41, 50-51, 58-59; <u>Glasner</u>, D. 143 ¶¶ 4, 18, 32; <u>Glasner</u>, D. 152 ¶¶ 4, 18, 32; <u>Fassina</u>, D. 128 ¶¶ 4, 18; <u>Fassina</u>, D. 137 ¶¶ 4, 18. After determining that their claims were covered, Defendants calculated their respective actual cash value ("ACV") payment to Plaintiffs pursuant to the replacement cost less depreciation ("RCLD") methodology, <u>Glasner</u>, D. 101 ¶¶ 29, 37, 46, 55; <u>Fassina</u>, D. 72 ¶¶ 32, 42, 52, 60, under which Defendants used the Xactimate® or Symbility® computer software to estimate the replacement cost value ("RCV") of each Plaintiff's claim, including costs for materials and labor, and subtracted Plaintiffs' deductible and depreciation from the estimated RCV amount to calculate the ACV, <u>Glasner</u>, D. 101 ¶¶ 57-71; <u>Fassina</u>, D. 72 ¶¶ 77-83. The line items depreciated from each of Plaintiffs' ACV payments included some amount of labor costs. <u>Glasner</u>, D. 101 ¶¶ 70-74; <u>Fassina</u>, D. 72 ¶¶ 82-87. Defendants then issued the ACV payments to Plaintiffs. <u>See</u> <u>Glasner,</u> D. 101 ¶ 74; <u>Fassina</u>, D. 72 ¶ 87.

## B.    <u>RCV Payments to the Seeleys, the Alis, Larsen, Black and the Dobbs</u>

The RCV payments to the Seeleys, the Alis, Larsen, Black and the Dobb (collectively, the "RCV Plaintiffs") are at the center of Defendants' motions for partial summary judgment. <u>Glasner</u>, D. 134; <u>Fassina</u>, D. 120. The following facts are thus undisputed unless otherwise indicated.

### 1.    *The Alis', Larsen's, Black's and the Dobbs' Loss Settlement Provisions & RCV Payments*

The Alis' and Larsen's loss settlement provisions under their respective LMPIC policies, Black's loss settlement provision under his LM policy and the Dobbs' loss settlement provision under their LIC policy are materially identical and state, in relevant parts:

3. Loss Settlement. Covered property losses are settled as follows:

a.  The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement, but not exceeding:
* * *
(d) The amount actually and necessarily spent to repair or replace the damage.

(2) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.
* * *
d. You may disregard the replacement cost provision and make a claim for loss of or damage to property on an actual cash value basis and then make claim within 180 days after loss for additional liability under this endorsement.

Glasner, D. 136-1 at 98-99, 106-07 (the Alis' LMPIC Loss Settlement Policy); Glasner, D. 136-2 at 16-17, 24-25 (Larsen's LMPIC Loss Settlement Policy); Fassina, D. 121-1 at 82-83 (Black's LM Loss Settlement Policy); id. at 22, 30 (the Dobbs' LIC Loss Settlement Policy).

On April 3, 2020, LMPIC issued Larsen an ACV payment of $10,558.24 under which LMPIC depreciated $2,709.43 in "estimated future repair labor."  Glasner, D. 143 ¶¶ 33-37; Glasner, D. 152 ¶¶ 33-37.  Larsen's public adjuster requested adjustments to the ACV amount and LMPIC issued Larsen a supplemental payment of $87.95.  Glasner, D. 136 ¶¶ 34-35.  After receiving his ACV payments, Larsen made repairs and requested RCV.  Id. ¶ 36.  On June 4, 2020, LMPIC issued Larsen a RCV payment of $7,244.99, id.; D. 143 ¶ 38; Glasner, D. 152 ¶ 38, and paid an additional $1,000 later that month, Glasner, D. 136 ¶ 38.

On August 7, 2020, LMPIC issued the Alis an ACV payment of $26,044.12 under which LMPIC depreciated $10,600.69 in "estimated future repair labor."  Glasner, D. 143 ¶¶ 19-23; Glasner, D. 152 ¶¶ 19-23.  After receiving their initial ACV payment, the Alis hired a public

adjuster who submitted a request for a supplemental payment.  Glasner, D. 136 ¶¶ 18-20.  On September 21, 2020, LMPIC issued a supplemental payment of $20,737.39 to the Alis and paid for emergency remediation services.  Id. ¶¶ 21-22.  The Alis subsequently made repairs and requested RCV.  Id. ¶ 23.  On November 18, 2020, LMPIC issued the Alis a RCV payment of $28,753.70.  Id.; Glasner, D. 143 ¶ 24; Glasner, D. 152 ¶ 24.

On June 2, 2021, LM issued Black an ACV payment of $19,955.43 under which LM depreciated $8,014.56 in "future repair labor."  Fassina, D. 128 ¶¶ 19, 23; Fassina, D. 137 ¶¶ 19, 23.  After receiving his ACV payment, Black made repairs to his property and requested RCV.  Fassina, D. 121 ¶ 21.  On July 30, 2021, LM issued Black a RCV payment of $17,756.60 for his dwelling and $169.06 for the appurtenant structure.  Id.; Fassina, D. 128 ¶ 24; Fassina, D. 137 ¶ 24.

On June 26, 2020, LIC issued the Dobbs an ACV payment of $2,549.97 under which LIC depreciated $2,078.36 in "estimated future repair labor."  Fassina, D. 128 ¶¶ 5, 9; Fassina, D. 137 ¶¶ 5, 9.  After receiving their ACV payment, the Dobbs made repairs and requested RCV.  Fassina, D. 121 ¶ 8.  On June 30, 2021, LIC issued the Dobbs a RCV payment of $4,030.  Id.; Fassina, D. 128 ¶ 10; Fassina, D. 137 ¶ 10.

### 2.    The Seeleys' Loss Settlement Provision & RCV Payment

The Seeleys' loss settlement provision under their Safeco Indiana policy states, in relevant parts:

> 5. Loss Settlement. Covered property losses are settled as follows:
>
> a.   Replacement Cost.  Property under Coverage A or B at replacement cost . . . subject to the following:
>
> (1) [Safeco Indiana] will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:
> * * *

> (c) the full amount actually and necessarily incurred to repair or replace the damaged building as determined shortly following the loss;
>
> * * *
>
> (3) If the cost to repair or replace is $2,500 or more, we will pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired or replaced.
>
> (4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis.

Glasner, D. 136-1 at 34-35, 51.  On July 22, 2022, Safeco Indiana issued the Seeleys an ACV payment of $9,615 under which Safeco Indiana depreciated $406.02 in labor costs associated with removing damaged roofing materials from the Seeleys' steep and high roof as a "paid when incurred" line item.  Glasner, D. 143 ¶¶ 5-9; Glasner, D. 152 ¶¶ 5-9.  After receiving their ACV payment, the Seeleys made repairs and requested RCV.  Glasner, D. 136 ¶¶ 6-8.  On September 8, 2020, Safeco Indiana issued the Seeleys a RCV payment of $4,360.58.  Id. ¶ 8; Glasner, D. 143 ¶ 10; Glasner, D. 152 ¶ 10.

## IV.    Procedural History

On June 24, 2021, Glasner filed a complaint individually and on behalf of all others similarly situated against AEIC.  Glasner, D. 1.  On September 12, 2022, Fassina filed a parallel complaint individually and on behalf of all others similarly situated against LMFIC.  Fassina, D. 1.  Plaintiffs filed their operative SACs against Defendants on March 11, 2024.  Glasner, D. 101; Fassina, D. 72.  On May 30, 2025, the Glasner Plaintiffs moved to certify a class of AEIC, LMPIC and Safeco Indiana policyholders, Glasner, D. 126, and the Fassina Plaintiffs moved to certify a class of LMFIC, Safeco, LM and LIC policyholders, Fassina, D. 111.  On July 28, 2025, Defendants moved for partial summary judgment as to the individual claims of Plaintiffs Larsen, the Alis, the Seeleys, Black and the Dobbs.  Glasner, D. 134; Fassina, D. 119.  The Court heard

the parties in both actions on the pending motions and took these matters under advisement. Glasner, D. 158; Fassina, D. 143.

## V.    Discussion

### A.    Sequence of Resolution

As a preliminary procedural matter, the parties dispute the proper sequence of resolution between Plaintiffs' class certification motions and Defendants' motions for partial summary judgment.  See Glasner, D. 142 at 4-6; Glasner, D. 151 at 2-3; Fassina, D. 127 at 5-7; Fassina, D. 136 at 2-3.  "The Civil Rules speak of the need to address class certification at 'an early practicable time,'" Danny B. ex rel. Elliott v. Raimondo, 784 F.3d 825, 837 (1st Cir. 2015) (quoting Fed. R. Civ. P. 23(c)(1)(A)), which "imports some leeway in determining the timing of such a decision," id.  Thus, "Rule 23 itself provides a judge with flexibility to choose whether to defer the issue of class certification until after summary judgment."  Lawson v. FMR LLC, 554 F. Supp. 3d 186, 192 (D. Mass. 2021) (citing Danny B. ex rel. Elliott, 784 F.3d at 837).

"The exercise of discretion in reserving the class certification question is informed by two factors:  first, whether an early resolution on the merits 'protect[s] both the parties and the court from needless and costly further litigation,'; and second, whether the ruling would prejudice any of the parties."  Lawson, 554 F. Supp. 3d at 192-93 (citing Wright v. Schock, 742 F.2d 541, 544-45 (9th Cir. 1984)).  Here, the Court concludes that the sequencing factors do not weigh in favor of addressing Defendants' motions for partial summary judgment before Plaintiffs' motions for class certification.

First, Defendants' partial summary judgment motions challenge only the individual claims brought by the RCV Plaintiffs in the respective actions.  Glasner, D. 135 at 2; Fassina, D. 120 at 2.  As such, the partial summary judgment motions seek only resolution of claims brought by this

subset of the combined eleven Plaintiffs against four of the combined seven Defendants under four

of the combined fourteen unique state laws covered under both proposed class actions.  Glasner,

D. 142 at 5; Fassina, D. 127 at 6.  This leaves outstanding the claims brought by the remaining

Plaintiffs (Glasner, Fassina and Edelen), those against the remaining Defendants and those under

the remaining state laws not at issue in Defendants' motions.  As such, while resolving Defendants'

motions first would provide the Court insight into the merits of class claims for RCV claimants

under the laws of the four states governing the RCV Plaintiffs' claims, this sequencing would not

"facilitate efficient resolution of the case," William B. Rubenstein, NEWBERG AND

RUBENSTEIN ON CLASS ACTIONS § 7:10, nor "avoid[]" the costly and timely determination

of class treatment for other claims by RCV claimants under different state laws.  Cf. Lawson, 554

F. Supp. 3d at 193; Watkins v. Allstate Prop. & Cas. Ins. Co., 659 F. Supp. 3d 730, 732 (S.D. Miss.

2023), aff'd, 90 F.4th 814 (5th Cir. 2024).

While Defendants contend that the Court must first address the challenges contained in

their partial summary judgment motions as to the RCV Plaintiffs' standing and the merits of their

claims because "the Court cannot certify a class represented by plaintiffs who lack [these criteria],"

Glasner, D. 151 at 3; Fassina, D. 136 at 3, as discussed below, the Court must also address the

RCV Plaintiffs' standing at the class certification stage, as well as certain of the merits challenges

that Defendants raise in their summary judgment motions due to their "overlap with the Rule 23

criteria," see Mantha v. QuoteWizard.com, LLC, 347 F.R.D. 376, 384 (D. Mass. 2024); Glasner,

D. 135 at 10-16; Fassina, D. 120 at 7-16.[2]  The Court will thus have the benefit of these analyses

---

[2] Indeed, Defendants' class certification briefing acknowledges this overlap.  Glasner, D. 139-4 at
15; Fassina, D. 124-4 at 15 (noting that "the Article III analysis [contained in Defendants' class
certification briefing] overlaps with the merits and standing issues fully briefed in Liberty's motion
for partial summary judgment"); Glasner, 139-4 at 16, 17-18 (noting that "'a court 'must not defer
merits questions bearing on commonality and predominance until summary judgment'") (citing

at the class certification stage to the extent they are necessary to resolving Plaintiffs' class certification motions. See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013). Additionally, even if, *arguendo*, as Defendants contend, the RCV Plaintiffs cannot serve as class representatives because they lack standing and their claims fail on the merits, see Premera Blue Cross v. Takeda Pharm. Co. Ltd., No. 23-cv-11254-MJJ, 2023 WL 9474011, at *7 (D. Mass. Nov. 20, 2023) (noting that "[a] named plaintiff that does not state any viable claim, naturally lacks the incentive needed to adequately litigate claims on behalf of a class") (citation omitted), as Defendants acknowledge, Glasner, D. 151 at 3; Fassina, D. 136 at 3, Glasner's, Fassina's and Edelen's claims remain, thus the proposed classes would not, necessarily, fail for lack of a class representative even if the RCV Plaintiffs cannot serve as such, cf. Brito v. Garland, 22 F.4th 240, 247 (1st Cir. 2021) (explaining that "[a] class action 'ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved'") (quoting Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)). The first sequencing factor, therefore, does not weigh in favor of resolving Defendants' partial summary judgment motions before class certification.

Second, Defendants fail to identify any prejudice resulting from resolving the class certification motions before the partial summary judgement motions, Glasner, D. 151 at 2-3; Fassina, D. 136 at 2-3, nor does the Court, see Lawson, 554 F. Supp. 3d at 193 (noting that any prejudice from addressing dispositive motion before class certification "would actually be experienced by [defendant], since it can at this point only obtain favorable preclusive judgment against the named plaintiff . . . and hence cannot benefit from the broader claim-preclusive effect

---

Speerly v. Gen. Motors, LLC, 143 F.4th 306, 317-18 (6th Cir. 2025) (en banc); Fassina, D. 124-4 at 16, 17-18 (same).

of a class action judgment as to all class members"). Here, where the dispositive motion at issue is only summary judgment as to some, but not all, of Plaintiffs, Defendants have not shown prejudice from addressing the class certification issue first. The second sequencing factor, therefore, also does not weigh in favor of resolving Defendants' partial summary judgment motions before class certification.

As both sequencing factors weigh against reserving Plaintiffs' motions for class certification until after deciding Defendants' motions for summary judgement, the Court declines to exercise its discretion to reserve on the class certification question. Accordingly, the Court first considers Plaintiffs' motions for class certification.

### B.    <u>Plaintiffs' Motions for Class Certification</u>

The <u>Glasner</u> Plaintiffs move for certification of the proposed class, comprised of:

All AEIC, LMPIC, and Safeco of Indiana personal-lines property insurance policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in the States at Issue;

(2) for which Liberty accepted coverage and issued an actual cash value payment during the class period that was calculated by Liberty exclusively through Xactimate® software or Symbility® software; and

(3) Liberty's own calculation of actual cash value resulted in a reduced actual cash value payment due to the "manipulation of estimating software," or which resulted in an eliminated actual cash value payment because the manipulation of estimating software caused the loss payment to drop below the applicable deductible.

<u>Glasner</u>, D. 126 at 2. The <u>Fassina</u> Plaintiffs similarly move for certification of the proposed class, comprised of:

All [Liberty], Safeco of America, LM, and LIC personal-lines property insurance policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in the States at Issue;

(2) for which Liberty accepted coverage and issued an actual cash value payment during the class period that was calculated by Liberty exclusively through Xactimate® software or Symbility® software; and

(3) Liberty's own calculation of actual cash value resulted in a reduced actual cash value payment due to the "manipulation of estimating software," or which resulted in an eliminated actual cash value payment because the manipulation of estimating software caused the loss payment to drop below the applicable deductible.

Fassina, D. 111 at 2.    Under both class definitions, the phrase "manipulation of estimating software" means:

(1) when making actual cash value calculations in Xactimate®, the application of the "depreciate removal," "depreciate non-material," and/or "depreciate O&P" depreciation option settings under policies that did not contain a labor depreciation permissive policy form; (2) when making actual cash value calculations in Xactimate®, the failure to include both corresponding removal and installation line items for steep- or high-pitched roofs when a steep- or high-pitched roof line item was identified as payable by Liberty itself; and/or (3) when making actual cash value calculations in Symbility®, the application of the "labor," "equipment" and/or "overhead and profit" depreciation option settings under policies that did not contain a labor depreciation permissive policy form.

Id.; Glasner, D. 126 at 2.    The proposed Glasner class covers nine states—Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee and Utah[3]—and a period of up to ten years.  Glasner, D. 126 at 2. The proposed Fassina class likewise covers nine "States at Issue"— Alabama, Arizona, Maryland, Mississippi, Missouri, Texas, Utah, Washington and Wisconsin[4]—

---

[3] Only AEIC policyholders in Arizona, Kentucky, Maryland, Mississippi, Ohio, Tennessee and Utah; LMPIC policyholders in Arizona, Connecticut, Illinois, Kentucky, Maryland, Ohio, Tennessee and Utah; and Safeco of Indiana in Ohio are included in the Glasner class.  Glasner, D. 126 at 2.

[4] Only LMFIC policyholders in Alabama, Arizona, Maryland, Missouri and Texas; Safeco policyholders in Alabama, Arizona, Maryland, Mississippi, Missouri, Utah, Washington and Wisconsin; LM policyholders in Alabama, Arizona, Maryland and Missouri; and LIC policyholders in Alabama, Arizona, Maryland and Texas are included in the Fassina class. Fassina, D. 111 at 2.

and a period of up to twelve years.  <u>Fassina</u>, D. 111 at 2-3.[5]  Plaintiffs must meet all the requirements under Rule 23(a) and under Rule 23(b)(1), (2) or (3) to prevail on their class certification motion.  <u>See Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997).  As Plaintiffs' declaratory judgment claim mirrors their breach of contract claim, the Court analyzes class certification as to both claims simultaneously.

     *1.*    *Standing*

As an initial matter, Defendants challenge Plaintiffs' standing.  <u>See United Seniors Ass'n, Inc. v. Philip Morris USA</u>, 500 F.3d 19, 23 (1st Cir. 2007) (noting that "[t]he federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case").  First, Defendants contend that the RCV Plaintiffs lack standing to pursue their breach of contract and declaratory judgment claims both individually and on behalf of a class because they "lack any cognizable injury-in-fact after having been paid full RCV," <u>Glasner</u>, D. 139-4 at 15-17; <u>Fassina</u>, D. 124-4 at 15-17, and fail to establish that future injury is imminent, <u>Glasner</u>, D. 139-4 at 17; <u>Fassina</u>, D. 124-4 at 17.  Second, Defendants contend that as the "remaining" Named Plaintiffs did not make an insurance claim that involved a "steep and high" roof, they cannot serve as a representative of those class members.  <u>Glasner</u>, D. 139-4 at 17; <u>Fassina</u>, D. 124-4 at 17.

Article III's standing requirement creates an "outer limit" within which class certification under Rule 23 operates.  <u>See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset</u>

---

[5] Plaintiffs' proposed class definitions differ from the class definition alleged in their respective operative SACs by narrowing the "States at Issue" and adding claims for which Liberty issued an ACV payment calculated through Symbility® software during the relevant class period.  <u>See Glasner</u>, D. 101 ¶¶ 76, 85; <u>Fassina</u>, D. 72 ¶¶ 89, 98.  These amended class definitions are proper because they are narrower than the original proposed definition and Defendants have not otherwise shown prejudice from this revision.  <u>See Lavigne v. First Cmty. Bancshares, Inc.</u>, No. 15-cv-00934-WJ/LF, 2018 WL 2694457, at *2 (D.N.M. June 5, 2018) (noting that "Plaintiff may amend the class definition because the new class definition is narrower than the originally proposed definition").

Acceptance Corp., 632 F.3d 762, 770 (1st Cir. 2011).  Under Article III, "[a]n actual case or controversy exists when the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted," i.e., standing.  Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'"  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 n.6 (2016) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 n.20 (1976)).  As the "Article III focus in class actions" is "on 'the incentives of the named plaintiffs to adequately litigate issues of importance to them,'" In re Asacol Antitrust Litig., 907 F.3d 42, 48-49 (1st Cir. 2018) (internal citation omitted), "[t]his focus is in many respects simply an application to aggregate litigation of the basic Article III requirement that a plaintiff possess 'such a personal stake in the outcome of the controversy as to assure . . . concrete adverseness.'"  Id. at 49 (quoting Baker, 369 U.S. at 204).  However, the analysis of Article III standing cannot be collapsed into Rule 23 considerations.  Id. at 48.  Thus, "the question of standing is not:  Are there differences between the claims of the class members and those of the class representative?  Rather, the pertinent question is:  Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?"  Id. at 49.

a)    Larsen, The Seeleys, The Alis, Black and The Dobbs Have
Standing to Assert Claims Individually and on Behalf of the Class

Defendants' argument that Larsen, the Seeleys, the Alis, Black and the Dobbs "lack any

cognizable injury-in-fact after having been paid full RCV" and thus lack standing to sue on behalf

of themselves and the class, Glasner, D. 139-4 at 15-16; Fassina, D. 124-4 at 15-16, fails.  To

establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

hypothetical.'"  Spokeo, Inc., 578 U.S. at 339 (citing Lujan v. Defenders of Wildlife, 504 U.S.

555, 560 (1992) (internal quotation marks omitted)).   "'Concrete' injuries embrace not only

tangible harms" such as economic harms, "but also intangible ones, like . . . '[t]he invasion of a

common-law right (including a right conferred by contract)' actionable without wallet injury."

Amrhein v. eClinical Works, LLC, 954 F.3d 328, 330-31 (1st Cir. 2020) (internal citations

omitted) (citing Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012).

As the First Circuit has recognized, "when a plaintiff generally alleges the existence of a

contract, express or implied, and a concomitant breach of that contract, her pleading adequately

shows an injury to her rights."  Katz, 672 F.3d at 72; see Coccoli v. Daprato, No. 13-cv-12757-

MBB, 2014 WL 1908934, at *7 (D. Mass. May 12, 2014) (noting that "it is well settled that a party

to a contract . . . ha[s] standing to sue for breach of contract"); see, e.g., Cognex Corp. v. Air Hydro

Power, LLC, 651 F. Supp. 3d 322, 327 (D. Mass. 2023) (concluding plaintiff suffered injury where

defendant filed suit in Florida in violation their contract's forum selection clause).  Here, the RCV

Plaintiffs allege that LMPIC, Safeco Indiana, LM and LIC, respectively, breached their insurance

contracts by depreciating labor from their ACV payments.  Glasner, D. 101 ¶¶ 103-05; Fassina, D.

72 ¶¶ 121-25.  There is no dispute that the RCV Plaintiffs were parties to their respective contracts

at the time their alleged breach occurred.  See Glasner, D. 136 ¶¶ 3, 14, 29; Fassina, D. 121 ¶¶ 2,

15.   Thus, as parties to an allegedly breached contract, the RCV Plaintiffs have a judicially cognizable injury for standing purposes.  Further, the proposed classes bring a breach of contract claim against Defendants based on this same theory of liability, Glasner, D. 101 ¶¶ 97-108; Fassina, D. 72 ¶¶ 110-20, thus the RCV Plaintiffs also have standing to sue on behalf of the class. See Stuart v. State Farm Fire & Cas. Co., 910 F.3d 371, 377 (8th Cir. 2018) (concluding RCV plaintiffs have standing because their theory of liability is that "all individuals who received an improperly-depreciated ACV payment suffered a legal injury—breach of contract—regardless of . . . the ultimate cost of repairing or replacing their property"); Hicks v. State Farm Fire & Cas. Co., 965 F.3d 452, 463 (6th Cir. 2020) (concluding same).

The RCV Plaintiffs also allege injury in the form of the "lost time value" of money during the period between when they were paid ACV with depreciated labor costs and when they received RCV payments.  Glasner, D. 148-15 at 4-8 (quoting Glasner, D. 101 ¶ 80) (internal quotation marks omitted)); Fassina, D. 133-15 at 4-8 (quoting Fassina, D. 72 ¶ 93) (internal quotation marks omitted)).  Defendants contend that RCV claimants cannot establish standing because they were fully paid labor costs depreciated at the ACV stage and cannot maintain a suit for prejudgment interest.  Glasner, D. 139-4 at 15-17; Fassina, D. 124-4 at 15-17.  Defendants' challenge, "[a]lthough couched as disputes about standing, . . . really go to the merits of plaintiffs' claims." Stuart, 910 F.3d at 377.  "[A]s the Supreme Court has reminded, 'one must not confuse weakness on the merits with absence of Article III standing.'"  Hicks, 965 F.3d at 463 (citing Arizona State Legislature v. Arizona Indep. Redistricting Comm'n, 576 U.S. 787, 800 (2015) (quoting Davis v. United States, 564 U.S. 229, 249 n. 10 (2011)).  "Ultimately, '[w]hether some Plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question,'" id., and does not necessarily prevent them from establishing

standing.  Although the First Circuit does not appear to have determined whether lost time value of money constitutes a financial injury for purposes of Article III standing, "the Seventh, Ninth, and Eleventh Circuits have all concluded that it does," Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC, 681 F. Supp. 3d 58, 69 (W.D.N.Y. 2023) (collecting cases); see Glasner, D. 148-15 at 6 n.5; Fassina, D. 133-15 at 6 n.5 (collecting cases from district courts recognizing same), and as previously noted, Glasner, D. 100 at 14; Fassina, D. 71 at 23-24, disputes over prejudgment interest are actionable in the class action context, id. (collecting cases).

Defendants' reference to the Third Circuit's decision in Lewis v. Gov't Emps. Ins. Co., 98 F.4th 452 (3d Cir. 2024), Glasner, D. 139-4 at 15-16; Fassina, D. 124-4 at 16, does not disturb this conclusion.  While the Third Circuit in Lewis concluded that the plaintiffs did not have standing because they alleged a financial injury based on their insurer underpaying their claim but had subsequently negotiated with their insurer to receive an amount over their claim value, Lewis, 98 F. 4th at 460-61, here, Plaintiffs allege a financial injury based on "the lost 'time value' of money during the period of withholding" the alleged labor depreciation from their ACV payments, Glasner, D. 101 ¶ 80; Fassina, D. 72 ¶ 93, i.e., prejudgment interest which they have not been paid, see Glasner, D. 143 ¶¶ 11, 25, 39; Glasner, D. 152 ¶¶ 11, 25, 39; Fassina, D. 128 ¶¶ 11, 25; Fassina, D. 137 ¶¶ 11, 25.  Thus, even though they received RCV payments, the RCV Plaintiffs' claims are not moot as they would still be able to maintain an action for any prejudgment interest stemming from the withholding of labor costs corresponding with the initial ACV payments.  Glasner, D. 100 at 14 (collecting cases); Fassina, D. 71 at 23-24 (collecting cases).

As to their declaratory judgment claims, for the reasons explained above, the RCV Plaintiffs' interest as parties to contracts at issue in their declaratory judgment claims, their alleged outstanding prejudgment interest resulting from the alleged breach and their "ongoing financial

interest in seeking service awards for their roles as class representatives" is also sufficient to support their declaratory judgment claim "regardless of what becomes of their breach-of-contract claims." Cortinas v. Liberty Mut. Pers. Ins. Co., No. 22-cv-00544-OLG, 2025 WL 233589, at *6 (W.D. Tex. Jan. 13, 2025), report and recommendation adopted, No. 22-cv-00544-OLG-HJB, 2025 WL 1062093 (W.D. Tex. Apr. 8, 2025); see Scott v. Dart, 99 F.4th 1076, 1082-84 (7th Cir. 2024) (concluding that "the possibility of an incentive award . . . is enough of an interest to keep the claim justiciable").

In sum, both the RCV Plaintiffs' breach of contract allegations and their alleged financial injury demonstrate that they have an incentive to adequately litigate and a personal stake in the proposed classes' breach of contract and declaratory judgment claims. See Asacol, 907 F.3d at 48-49. Accordingly, the RCV Plaintiffs have standing to bring these claims on behalf of the class.

> b)    Plaintiffs Have Standing to Assert Claims On Behalf Of Class Members Whose Claims Involve Steep and High Roofs

Defendants' argument that Plaintiffs cannot represent class members whose insurance claims involved "steep and high" roofs because none of their insurance claims involved steep and high roofs, Glasner, D. 139-4 at 17; Fassina, D. 124-4 at 17, also fails. First, as noted above, the Seeleys' insurance claim indeed involves a steep and high roof, Glasner, D. 143 ¶ 7; Glasner, D. 152 ¶ 7, and they have standing to bring class claims in Glasner. Second, Defendants' argument ignores that Plaintiffs bring a single breach of contract claim based on labor depreciation, not, as Defendants suggest, separate breach of contract claims based on different methods of depreciating labor. See Glasner, D. 101 ¶¶ 97-108; Fassina, D. 72 ¶¶ 110-20; see also Glasner, D. 148-15 at 12-13 n.17 (citing Angell v. GEICO Adv. Ins. Co., 67 F.4th 727, 735-37 (5th Cir. 2023) (rejecting argument that because no named plaintiff was deprived of all three challenged fees, named plaintiffs do not have standing to represent class based on depreciation of all purchasing fees as

deprivation of the fees "amounts to the same harm" and "is dependent on an interpretation of the same language in the Policies and how the Policies calculate ACV")); <u>Fassina</u>, D. 133-15 at 12-13 n.17 (same).  Moreover, "[n]othing in [our] precedent . . . suggests that the claims of the named plaintiffs must in all respects be identical to the claims of each class member."  <u>Asacol</u>, 907 F.3d at 49.  Instead, the question of standing is whether "the differences that do exist [are] the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?"  <u>Id.</u>  Here, as Plaintiffs' theory of liability is that Defendants breached their insurance agreements by depreciating labor costs, and depreciating labor costs by "fail[ing] to include both corresponding removal and installation line items for steep- or high-pitched roofs when a steep- or high-pitched roof line item was identified as payable" falls into this theory of liability, <u>Glasner</u>, D. 126 at 2; <u>Fassina</u>, D. 111 at 2, the Court does not conclude that Plaintiffs have an insufficient personal stake in the adjudication of the claims of class members whose labor costs were depreciated based on depreciated "steep and high" roof labor.  Thus, Plaintiffs have standing to assert claims on behalf of individuals whose insurance claims involved steep and high roofs.

For the aforementioned reasons, the Court concludes that Plaintiffs have standing to bring their breach of contract and declaratory judgment claims on behalf of the proposed classes.

### 2.    Ascertainably

Before addressing the Rule 23(a) and (b) analysis, the Court must determine "whether the scope of the class . . . is appropriate, i.e., whether it is administratively feasible."  <u>Kent v. SunAmerica Life Ins. Co.</u>, 190 F.R.D. 271, 278 (D. Mass. 2000).  A class must be determinable by "stable and objective factors" at the outset of a case, <u>id.</u>; not every class member must be identified, but the class must be sufficiently ascertainable to permit a court to "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment."

Id.  As Plaintiffs argue, and Defendants do not dispute, the respective definitions for the proposed classes here identifies members by "(1) geography; (2) temporal date; (3) fact of an ACV payment on a structural damage claim; (4) application of a software program's option settings to lower that payment; (5) policy type (personal lines structural policies excluding labor depreciation permissive forms); and (6) circumstance (policy limits not exhausted by first ACV payment)" during a defined time period.  Glasner, D. 130-1 at 12-13; Fassina, D. 115-1 at 13.  Defendants' suggestion that ascertaining the class will require "detailed reviews of information and documents contained in thousands of individual claim files . . . for a large portion . . . of the claims at issue," Glasner, D. 139-4 at 27; id. at 27 n.29; Fassina, D. 124-4 at 27; id. at 27 n.31, does not undermine the ascertainability of the class, see Mitchell v. State Farm Fire & Cas. Co., 327 F.R.D. 552, 560-61 (N.D. Miss. 2018) (concluding that while "identifying class members in this case may pose some clerical and administrative challenges . . . sorting and working through State Farm claim records is a feasible process by which to identify the class members"), aff'd, 954 F.3d 700 (5th Cir. 2020).  The Court, therefore, concludes that Plaintiffs have provided objective criteria for defining the class and have satisfied their initial burden of showing ascertainability.

> 3.    *Rule 23(a) Requirements*

> > a)    <u>Numerosity</u>

Turning to the Rule 23(a) requirements, the Court first considers whether "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No minimum number of plaintiffs is required . . . but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  García-Rubiera v. Calderón, 570 F.3d 443, 460 (1st Cir. 2009) (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).  Plaintiffs assert, and Defendants do not dispute, that they have met

their burden with respect to numerosity because "there are thousands of claims from which labor costs were withheld from ACV payments by Defendants." Glasner, D. 130-1 at 14; Fassina, D. 115-1 at 14; see Glasner, D. 139-4 at 36; Fassina, D. 124-4 at 36. The Court concludes that the proposed classes satisfy the numerosity requirement.

<strong>b)    Commonality</strong>

Plaintiffs also must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To establish commonality under Rule 23(a)(2), one common question is enough." Savino v. Souza, 453 F. Supp. 3d 441, 450 (D. Mass. 2020) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 359 (2011)). "A question is common if it is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Parent/Professional Advocacy League v. City of Springfield, 934 F.3d 13, 28 (1st Cir. 2019) (quoting Wal-Mart, 564 U.S. at 350). It is not critical whether common "questions" are raised; the decisive factor is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (quoting Wal-Mart, 564 U.S. at 350). The commonality requirement is not to be conflated with the predominance criterion, which is "far more demanding." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (quoting Amchem, 521 U.S. at 624). The commonality requirement is, by comparison, a "low bar." Id. at 19.

Plaintiffs contend that there are common issues as to whether Defendants breached their policy contracts by depreciating labor costs in calculating ACV payments. Glasner, D. 130-1 at 15-16; Fassina, D. 115-1 at 15-16. This issue satisfies the commonality requirement. First, "[t]he common factual basis is found in the terms of the contract," which are standard for all class members. See Smilow, 323 F.3d at 39. Second, the common question of law is whether those

23

terms precluded depreciation of labor costs from ACV calculations.  See id.  Defendants argue that

these common questions do not "'drive the resolution of the litigation.'"  Glasner, D. 139-4 at 36

(citing Wal-Mart, 564 U.S. at 350); Fassina, D. 124-4 at 36 (same).  The Court, however, concludes

that Plaintiffs at least have satisfied the low bar of the commonality requirement here as to breach.

Mitchell, 327 F.R.D. at 561 (concluding commonality element is met where "[t]he proposed class

members, all of whom purchased insurance coverage from State Farm, each have a claim

concerning the issue of whether State Farm breached its policy contract by depreciating labor costs

in calculating actual cash value payments"); Hicks, 965 F.3d at 458-59 (affirming district court's

commonality conclusion as to same); Stuart, 910 F.3d at 375-77 (same).

c)    Typicality

As to the typicality requirement, Plaintiffs must show that "the claims or defenses of the

representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

"The representative plaintiff satisfies the typicality requirement when its injuries arise from the

same events or course of conduct as do the injuries of the class and when plaintiff's claims and

those of the class are based on the same legal theory."  In re Credit Suisse–AOL Sec. Litig., 253

F.R.D. 17, 23 (D. Mass. 2008).  Plaintiffs contend that their injuries arise from Defendants'

withholding of future labor from their ACV payments and that this injury poses the same injury as

the proposed class.  Glasner, D. 130-1 at 16; Fassina, D. 115-1 at 16.  Defendants argue that

"substantial differences in claims and injuries between the RCV Plaintiffs and ACV claimants . . .

precludes a finding of typicality and adequacy."  Glasner, D. 139-4 at 36; Fassina, D. 124-4 at 36.

The Court finds that the typicality requirement is met.  The claims presented by Plaintiffs

arise from Defendants' alleged practice of depreciating labor costs when calculating ACV.  See

Arnold v. State Farm Fire & Cas. Co., No. 17-cv-00148-TFM-C, 2020 WL 6879271, at *5 (S.D.

Ala. Nov. 23, 2020).  Plaintiffs contend that the alleged underpayment of ACV claims breached

their insurance contracts with Defendants and these claims "are identical to the claims of the class."

See id.  Typicality is thus satisfied.  See id.; Hicks v. State Farm Fire & Cas. Co., No. 14-cv-00053-

HRW, 2019 WL 846044, at *4 (E.D. Ky. Feb. 21, 2019) (concluding same).  Even if the RCV

Plaintiffs seek different damages amounts than the proposed class members who did not receive a

RCV payment, variations in damages do not make a proposed class representative atypical.

Bowers v. Russell, 766 F. Supp. 3d 136, 148 (D. Mass. 2025) (noting that "Plaintiffs need not

suffer identical damages 'when the common issue of liability is shared'") ( internal citation

omitted); see Arnold, 2020 WL 6879271, at *7.  Further, "[a]ll class members seek prejudgment

interest," thus the RCV Plaintiffs' status as "interest only" claimants does not make them atypical.

Arnold, 2020 WL 6879271, at *7.  The Court concludes that typicality is satisfied.

d)  <u>Adequacy</u>

As to the adequacy of the class representatives, pursuant to Rule 23(a)(4), the Court

considers whether "the representative parties will fairly and adequately protect the interests of the

class."  Fed. R. Civ. P. 23(a)(4).  This factor requires Plaintiffs to establish the absence of a

potential conflict and an assurance of vigorous prosecution.  See Andrews v. Bechtel Power Corp.,

780 F.2d 124, 130 (1st Cir. 1985).  "[P]erfect symmetry of interest is not required and not every

discrepancy among the interests of class members renders a putative class action untenable."

Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012).  Rather, the inquiry "serves to

uncover conflicts of interest between named parties and the class they seek to represent," Amchem,

521 U.S. at 594, and focuses on conflicts that are "fundamental to the suit and that go to the heart

of the litigation," Matamoros, 699 F.3d at 138 (quoting 1 William B. Rubenstein, Newberg on

Class Actions § 3:58 (5th ed. 2012)).  "[S]peculative conflict should be disregarded at the class

25

certification stage." Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 265 (D. Mass. 2008) (citation omitted). Plaintiffs contend that their policies are "materially the same as those of the class" and that their theory of liability is uniform throughout the class. Glasner, D. 130-1 at 16-17; Fassina, D. 115-1 at 16-17. Specifically, Plaintiffs propose to use a standard mathematical formula to calculate damages for each class member which has been used by other certified labor depreciation class actions. See Arnold, 2020 WL 6879271, at *9; Glasner, D. 130-1 at 17 n.37 (citing Hicks, 965 F.3d at 460); Mitchell v. State Farm Fire & Cas. Co., 954 F.3d 700, 711-12 (5th Cir. 2020); Generation Changers Church v. Church Mut. Ins. Co., 693 F. Supp. 3d 795, 819 (M.D. Tenn. Sept. 22, 2023); Dennington v. State Farm Fire & Cas. Co., No. 14-cv-04001, 2016 WL 11596076, at *7 (W.D. Ark. Aug. 24, 2016), aff'd sub nom Stuart, 910 F.3d at 376-77); Fassina, D. 115-1 at 17 n.38 (same). Further, contrary to Defendants' suggestion, Glasner, D. 139-4 at 36; Fassina, D. 124-4 at 36, as explained above, because "[a]ll class members seek prejudgment interest," there is no conflict of interest between class members. Arnold, 2020 WL 6879271, at *7; Hicks, 965 F.3d at 463. The Court concludes that the adequacy requirement for the class representatives has been satisfied.

In addition to satisfying the adequacy requirement for the proposed class representatives, Plaintiffs must show that "counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." Andrews, 780 F.2d at 130. As to the proposed class counsel, Plaintiffs' lead and co-counsel have extensive experience in labor depreciation class actions, see Glasner, D. 80-1; Glasner, D. 128-18; Glasner, D. 128-19; Glasner, D. 128-20; Fassina, D. 116; Fassina, D. 113-18; Fassina, D. 113-19; Fassina, D. 113-20, and Defendants do not contest their qualifications. Accordingly, the Court finds that Plaintiffs' counsel is sufficiently qualified and experienced.

For the aforementioned reasons, Plaintiffs satisfy the Rule 23(a) requirements.

    4.    *Rule 23(b)(3) Predominance*

Rule 23(b)(3) requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The focus of the predominance inquiry is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623.  When conducting a Rule 23(b)(3) analysis, the Court must determine whether there is "reason to think that [individualized] questions will overwhelm common ones and render class certification inappropriate."  Halliburton Co. v. Erica P. John Fund Inc., 573 U.S. 258, 276 (2014).  This requires a district court to "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000).  It is, therefore, typical for the predominance inquiry to overlap with the merits inquiry.  See, e.g., New Motor Vehicles, 522 F.3d at 25; Celexa, 2014 WL 108197, at *7-9.  At class certification, merits questions may only be considered to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, 568 U.S. at 466.  "The requirement that courts perform a 'searching inquiry' at the class certification stage serves an important function:  ensuring that class certification does not allow plaintiffs to unfairly bully defendants into settling 'non-meritorious cases in an effort to avoid both risk of liability and litigation expense.'" Credit Suisse-AOL, 253 F.R.D. at 22 (quoting New Motor Vehicles, 522 F.3d at 8).

    a)    <ins>The Common Question of Whether Defendants Breached Their Insurance Policies By Depreciating Labor Predominates</ins>

Plaintiffs contend that this case centers on the predominate question of "whether, as a matter of law, Defendants breached their standard-form policies by withholding labor from ACV

27

payments."  Glasner, D. 130-1 at 18; Fassina, D. 115-1 at 18.  As Plaintiffs note, "'[c]ourts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs.'"  Glasner, D. 130-1 at 3 (quoting Hicks, 2019 WL 846044, at *5); Fassina, D. 115-1 at 3 (same); see Glasner, D. 130-1 at 3 n.1 (collecting case); Fassina, D. 115-1 at 3 n.1 (same); see also Arnold, 2020 WL 6879271, at *8; Mitchell, 954 F.3d at 710-11; Stuart, 910 F.3d 371.  Like these cases, here, "Plaintiffs' theory is that [Defendants] violated its contractual obligations by depreciating [] labor when calculating ACV, thereby reducing the size of their ACV payments . . . [t]he viability of this theory is a common question well suited to classwide resolution."  Stuart, 910 F.3d at 375; see Sims v. Allstate Fire & Cas. Ins. Co., No. SA-22-CV-580-JKP-HJB (W.D. Tex. Jan. 20, 2026), D. 196 at 10 (recommending class certification and concluding that "predominance is satisfied here because the case turns 'on a single, predominating question: whether, as a matter of law, Defendants breached their standard-form policies by withholding labor as depreciation'") (citation omitted).

Defendants contest this "framing" of the predominant question and point the Court to a different string of cases, Glasner, D. 139-4 at 18-22 (citing Drummond v. Progressive Specialty Ins. Co, 142 F.4th 149, 155-56 (3d Cir. 2025); Lara v. First Nat'l Ins. Co. of Am., 25 F.4th 1134, 1137 (9th Cir. 2022); Sampson v. United Servs. Auto. Ass'n, 83 F.4th 414, 422 (5th Cir. 2023)); Fassina, D. 124-4 at 18-22 (same), arguing that the "legally correct question [i]s whether [Defendants] paid what [they] owed, not what factors [they] considered in calculating the payment," Glasner, D. 139-4 at 19; Fassina, D. 124-4 at 19.  Defendants' cases, however, examine a distinct theory of liability.  The duty to calculate ACV "in accordance with a prescribed method or formula" is "independent of a promise by the insurer to pay for covered losses," or "a contractual

duty to pay insureds the actual cash value of losses." Schroeder v. Progressive Paloverde Ins. Co., 146 F.4th 567, 578 (7th Cir. 2025). Defendants' focus on the latter theory of liability is misplaced here, as Plaintiffs advance a theory of liability which turns on an alleged "promise by an insurer to calculate covered losses in accordance with a prescribed method or formula," id., here, to calculate ACV without depreciating labor costs, see Glasner, D. 101 ¶ 103; Fassina, D. 72 ¶ 116, not on the "independent" promise to pay for covered losses. Unlike the cases cited by Defendants, under Plaintiffs' theory of liability, "the issue is not whether the actual cash value payments paid by [Defendants] were reasonable or sufficient, but rather whether [Defendants] w[ere] entitled to deduct labor depreciation in the first place," Mitchell, 327 F.R.D. at 563; Arnold, 2020 WL 6879271, at *8 (noting same); cf. Drummond, 142 F.4th at 155 (concluding that "plaintiffs' theory of liability hinged on proving Progressive breached its insurance agreement with insureds by underpaying them for their totaled vehicles"). Plaintiffs thus properly frame the question of breach as "whether, as a matter of law, Defendants breached their standard-form policies by withholding labor from ACV payments." Glasner, D. 130-1 at 18; Fassina, D. 115-1 at 18.

b)    The Common Question Of Breach Predominates Over Individualized Damages

Defendants next contend that even if Plaintiffs can prove breach, individualized damage issues defeat predominance. Glasner, D. 139-4 at 22-28; Fassina, D. 124-4 at 22-28. This argument too fails.

(1)    Individualized Damages Do Not Defeat Predominance

As the First Circuit explained, "the Supreme Court in Amgen and the circuits in other cases have made clear that the need for some individualized determinations at the liability and damages stage does not defeat class certification" as "Rule 23(b)(3) 'does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof.'"

29

Nexium, 777 F.3d at 21 (citing Amgen, 133 S.Ct. at 1196 (alterations and citations in original)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages.'" Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citation omitted). Indeed, "[p]redominance is not defeated by individual damages questions as long as liability is still subject to common proof." New Motor Vehicles, 522 F.3d at 28 (citing Tardiff v. Knox County, 365 F.3d 1, 6 (1st Cir.2004); Smilow, 323 F.3d at 40). As such, "[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)." Smilow, 323 F.3d at 40.

The Court finds the First Circuit's decision in Smilow instructive. In Smilow, plaintiffs who were charged by their phone company for incoming calls brought a proposed class action for breach of contract against said phone company alleging that the company's form contract precluded it from doing so. Id. at 35. The court concluded that the common question of fact "found in the terms of the contract, which are identical for all class members" and "[t]he common question of law . . . whether those terms precluded defendant from charging for incoming calls" predominated the individualized question of damages. Id. at 39. In doing so, the First Circuit noted that "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." Id. at 40. Further, the First Circuit established that "[c]ommon issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria." Id. (collecting cases).

Here, too, the common questions of contractual duty and breach predominate over individualized damages. Like the case in Smilow, "[t]h[is] case turns on interpretation of the form

contract, executed by all class members and defendant[s]." Id. at 42. The question of whether depreciating labor costs from ACV calculations violates these form contracts is a common question of liability, which predominates "even if individual damages issues remain." Id. at 40; see Hicks, 965 F.3d at 460-63 (concluding the common labor depreciation question of whether State Farm breached its contracts by depreciating labor from Plaintiffs' ACV payments predominates over individual questions even though Plaintiffs' damages will vary); Mitchell, 954 F.3d at 710-12 (same); Stuart, 91 F.3d at 375-77 (same). Contrary to Defendants' assertion, "[n]o individualized proof is necessary to resolve this liability question on a classwide basis because [Defendants] do[] not dispute that [during the class period], [they] depreciated labor costs when calculating ACVs." See Hicks, 965 F.3d at 459; see also Glasner, D. 102 ¶¶ 29, 37, 46, 55; Fassina, D. 74 ¶¶ 32, 42, 52, 60. Thus, the question of whether Defendants breached their insurance policies by depreciating labor costs can be addressed on a classwide basis.

> (2)     Damages Can Be Determined Through A Common Mechanism On A Classwide Basis

Defendants' argument that because "damages are an essential liability element of a claim for breach of contract" for all states except Maryland and Mississippi, individualized damages "defeat predominance," Glasner, D. 139-4 at 22; Fassina, D. 124-4 at 22, is unavailing under First Circuit precedent. The First Circuit has made clear that "[e]ven in cases where 'the issue of injury-in-fact [not just damages calculation] presents individual questions, . . . it does not necessarily follow that they *predominate* over common ones and that class action treatment is therefore unwarranted.'" Nexium, 777 F.3d at 21 (emphasis and alteration in original) (citing Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 108 (2d Cir. 2007)); Asacol, 907 F.3d at 51-52 (recognizing same). When evaluating whether a class can be certified in a case where the claim's required element of "injury-in-fact will be an individual issue, the resolution of which will

vary among class members," the First Circuit focuses on "whether any dissimilarity among the claims of class members can be dealt with in a manner that is not 'inefficient or unfair.'" Asacol, 907 F.3d at 51 (quoting Amgen, 568 U.S. at 469) (citation omitted). Under this analysis, "a class may be certified notwithstanding the need to adjudicate individual issues" including those that are "a required element of a plaintiff's case . . . so long as the proposed adjudication will be both 'administratively feasible' and 'protective of defendants' Seventh Amendment and due process rights." Id. at 51-52 (quoting Nexium, 777 F.3d at 19).

"[T]o determine whether a class certified for litigation will be manageable, the district court must at the time of certification offer a reasonable and workable plan" that provides the defendant "opportunity to press at trial genuine challenges to allegations of injury-in-fact . . . in a manner that is protective of the defendant's constitutional rights and does not cause individual inquiries to overwhelm common issues." Id. at 58. The certification of classes where elements of a claim required individualized determinations, including the element of damages in breach of contract claims, see Smilow, 323 F.3d at 40 (certifying class of breach of contract claimants despite need for individualized damages); see also Hebert v. Vantage Travel Serv., Inc., 334 F.R.D. 362, 373 (D. Mass. 2019) (certifying same); Nexium, 777 F.3d at 21 (certifying class of antitrust claimants despite need for individualized damages), is permissible so long as the court was "satisfied that, prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members," Nexium, 777 F.3d at 19.

Here, Plaintiffs have proposed the following mathematical formula to calculate damages:

PRINCIPAL DAMAGES = (WITHHELD LABOR AMOUNT NOT RESULTING IN TOTAL CLAIM EXCEEDING POLICY LIMITS − RECOVERED LABOR WITHHOLDINGS) + STATUTORY AND COMMON LAW INTEREST

Glasner, D. 130-1 at 8; Fassina, D. 115-1 at 8. This formula, aside from the "statutory and common law interest," relies on "[d]ata from Defendants' claims management software, Navigator, and from the Xactimate® and Symbility® claims." Glasner, D. 130-1 at 8-9; Fassina, D. 115-1 at 8-9. This damage model has been accepted by several other courts to establish damages in other proposed labor cost depreciation class action. See Hicks, 965 F.3d at 460; Arnold, 2020 WL 6879271, at *9; Stuart, 910 F.3d at 373-77 (noting same). Plaintiffs' expert testifies that the process of accessing this data and calculating damages can be completed "within 2-3 minutes." Glasner, D. 148-15 at 19-20 (citing Glasner, D. 127-12 at ¶¶ 13-19, 81-89); Fassina, D. 133-15 at 19-20 (citing Fassina, D. 112-11 at ¶¶ 13-19, 81-89); see Mitchell, 954 F.3d at 712 (noting that "calculating damages for each class member by using toggle features in [defendant]'s claim estimation software would be feasible"). Thus, the Court is satisfied that it will be possible to establish a mechanism for "distinguishing the injured from the uninjured class members," Nexium, 777 F.3d at 19;; see Smilow, 323 F.3d at 40 (concluding that "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim").

Defendants' contention that Plaintiffs' proposed damages formula does not prove damages on a classwide basis because proposed class members who receive full RCV have no damages under it, Glasner, D. 139-4 at 22-25; Fassina, D. 124-4 at 22-25, fails. Defendants' challenge is grounded in an argument based on the merits, not based on whether Plaintiffs' mathematical formula provides a "reasonable and workable plan" for distinguishing the injured from the uninjured class members at the class certification stage. See Asacol, 907 F.3d at 58. Indeed, Defendants' argument itself demonstrates that the formula provides such a plan, as Defendants contend that the formula "anticipates that there will be absent class members who . . . have already

recovered 100% of the alleged 'labor withholdings'" and cannot recover interest to support damages, Glasner, D. 139-4 at 24-25; Fassina, D. 124-4 at 24-25, i.e. uninjured class members. Defendants' invocation of New Motor Vehicles to suggest that the statutory and common law interest aspect to this formula presents a "novel or complex theory of recovery" requiring a more "searching inquiry into the viability of that theory," see New Motor Vehicles, 522 F.3d at 26; Glasner, D. 139-4 at 25; Fassina, D. 124-4 at 25, also falters in the face of courts in other jurisdictions that have certified similar labor depreciation breach of contract-based classes reliant on identical mathematical formulas inclusive of RCV claimants seeking only prejudgment interest, see, e.g., Dennington, 2016 WL 11596076, at *7; Hicks, 965 F.3d at 460-64. As those cases recognized, "[w]hether some Plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question," Stuart, 910 F.3d at 377; Hicks, 965 F.3d at 463 (recognizing same), and the possibility that some claimants may fail to prevail on the merits "does not warrant denial of class certification," Mantha, 347 F.R.D. at 398 (noting that "[t]he fact that a class list contains members who claims may fail on the merits does not mean that the class cannot be certified") (citing Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 396 (M.D.N.C. 2015), aff'd, 925 F.3d 643 (4th Cir. 2019)).[6]

Defendants' reliance upon Asacol for the argument that the proposed classes cannot be certified because they contain too large a number of uninjured class members, Glasner, D. 139-4

---

[6] Defendants' argument that multistate variations in awarding prejudgment interest weigh against certifying the class, Glasner, D. 139-4 at 33; Fassina, D. 124-4 at 33, is likewise unavailing at this stage. State law variations regarding damages are not sufficiently material to defeat class certification. In re Solodyn (Minocycline Hydrochloride) Antitrust Litig., No. 14-cv-02503-MD, 2017 WL 4621777, at *20 (D. Mass. Oct. 16, 2017). Rather, the issue of prejudgment interest, in this case where damages is an element of most of the state laws at issue, is, as noted above, a merits questions, see Stuart, 910 F.3d at 377; Hicks, 965 F.3d at 463, which is properly resolved at subsequent stages of this litigation, In re Lidoderm Antitrust Litig., No. 14-cv-02521-MD-WHO, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017).

at 22-23; Fassina, D. 124-4 at 22-23, likewise fails to save their challenge.  In Asacol, the First Circuit considered whether a proposed class where approximately ten percent of class members were uninjured could properly be certified.  Asacol, 907 F.3d at 53-54.  The First Circuit concluded that it could not.  Id. at 58.  As the First Circuit explained, "[t]he need to identify [uninjured] individuals will predominate and render an adjudication unmanageable absent . . . some [] mechanism that can manageably remove uninjured persons from the class in a manner that protects the parties' rights."  Id. at 53-54.  As explained above, such a mechanism exists here in the form of Plaintiffs' mathematical formula which has previously been accepted by several of our sister courts.  Cf. id. at 52-54 (rejecting mechanism for identifying uninjured class members where plaintiffs failed to specify "what data and documentation may be deemed necessary, what the formula will be, and how the claims administrator will decide who suffered no injury").  Moreover, although the First Circuit has recognized that the presence of a large portion of uninjured class members might "render the class impractical or improper," see Nexium, 777 F.3d at 31, Defendants have failed to identify any data or expert analysis to support their contention that "a majority of the putative class members are uninjured," see Glasner, D. 139-4 at 23 (citing Glasner, Seutter Decl., D. 139-1 ¶¶ 7, 12); Fassina, D. 124-4 at 23 (citing Fassina, Seutter Decl., D. 124-1 ¶¶ 7, 12); cf. Asacol, 907 F. 3d at 46-47 (explaining that the district court concluded approximately ten percent of the class was uninjured based on "the reports of both sides' experts").  Instead, Defendants rely solely upon the non-expert declaration of a Liberty Senior Examiner and Quality Assurance Specialist who asserts, "[b]ased on [her] experience with Liberty and the claims process," that, in general, "insureds . . . seek RCV benefits more often than not," Glasner, Seutter Decl., D. 139-1 ¶¶ 7, 12; Fassina, Seutter Decl., D. 124-1 ¶¶ 7, 12, which neither points to data, offers a concrete estimation of insureds who seek RCV, nor speaks directly to the proportion of

injured proposed class members in the present actions.   In contrast, and unlike in <u>Asacol</u>, "[p]laintiffs' evidence has shown that the vast majority of class members were probably injured," and the Court sees no basis for concluding that "the number of uninjured members here is [] so large as to render the class impractical or improper," "to cause non-common issues to predominate," or to "conclud[e] the number of uninjured class members here is so large as to violate defendants' 7th Amendment or due process rights." <u>Nexium</u>, 777 F.3d at 31; <u>see</u> Johnson-Robertson Rep., <u>Glasner</u>, D. 127-12 ¶¶ 68, 80; Mitchell Suppl. Rep., <u>Glasner</u>, D. 127-13 ¶¶ 14, 16; Johnson-Robertson Rep., <u>Fassina</u>, D. 112-11 ¶¶ 68, 80; Mitchell Suppl. Rep., <u>Fassina</u>, D. 112-12 ¶¶ 14, 16.  In short, Defendants have failed to illustrate the existence of an <u>Asacol</u> problem.

Moreover, Defendants' contention that the majority of the class is uninjured is based on their purported payment of RCV to some portion of the class.  <u>See</u> <u>Glasner</u>, D. 139-4 at 23-25; <u>Fassina</u>, D. 124-4 at 23-25.  Payment, however, is generally an affirmative defense, <u>see</u> Fed. R. Civ. P. 8(c)(1), not, as Defendants suggest, proof that said members were never injured in the first instance.  Although "'affirmative defenses should be considered in making class certification decisions,'" <u>Smilow</u>, 323 F.3d at 39 (quoting <u>Waste Mgmt. Holdings, Inc.</u>, 208 F.3d at 295), "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members," <u>id.</u> (collecting cases). Indeed, "[a] district court's reliance on [a defendants' potential defense]" should not "le[a]d it to overlook questions of law and fact common to all class members." <u>Id.</u> (concluding that a potential defense does not defeat predominance); <u>Waste Mgmt. Holdings, Inc.</u>, 208 F.3d at 296 (recognizing same).  Here, in particular, as Defendants' payment defense is common amongst the class, it "is not a bar to class certification," <u>see</u> <u>Lott v. Louisville Metro Gov.</u>,  No. 19-cv-271-RGJ, 2021 WL 1031008, at *11 (W.D. Ky. Mar. 17, 2022); <u>Smilow</u>, 323 F.3d at 39-40.  Nor is Defendants'

"potential defense" of an alleged right of appraisal.  See Glasner, D. 139-4 at 29-31; Fassina, D. 124-4 at 29-31.  Here, Defendants admittedly "ha[ve] not sought appraisal as to the Proposed Class Representatives," Glasner, D. 139-4 at 29; Fassina, D. 124-4 at 29, and concede that "an insured is free to reject their appraisal award and maintain their civil claims," Glasner, D. 139-4 at 30; Fassina, D. 124-4 at 30, but still maintain that their right of appraisal precludes a finding of predominance because they could demand appraisal as to the claims of absent class members, Glasner, D. 139-4 at 29; Fassina, D. 124-4 at 29.  The Court is not persuaded that this alleged right of appraisal will defeat predominance at this time.  As a general matter, "the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones."  Waste Mgmt. Holdings, Inc., 208 F.3d at 296; see Smilow, 323 F.3d at 39-40 (reversing district court's denial of class certification based on an affirmative defense).  Further, Defendants have the burden to brief the applicability of their purported right of appraisal defense, see In re Pharm. Indus. Average Wholesale Price Litig., 252 F.R.D. 83, 102 (D. Mass. 2008), and none of their cited cases "suggest that individualized appraisal issues must also be considered in a suit dealing solely with a contract interpretation question." Mitchell, 954 F.3d at 712 n.17.  This defense appears "inapposite" to the claim that Defendants breached their contracts by depreciating labor costs.  See id.

c)     Multi-State Considerations Do Not Defeat Predominance

Defendants also contend that "multistate complexities" weigh against certifying the respective proposed nine-state classes.  Glasner, D. 139-4 at 31-34; Fassina, D. 124-4 at 31-34; see Generation Changers Church, 693 F. Supp. 3d at 815.  "The presence of divergent state laws can 'swamp any common issues and defeat predominance'; therefore, the Court must determine which states' laws govern the claims of the class members in order to conduct its predominance

analysis." Ortiz v. Saba Univ. Sch. of Med., 348 F.R.D. 4, 12 (D. Mass. 2024) (internal citations omitted). "This requires an initial assessment of whether a genuine conflict exists among the potentially applicable state laws that could defeat predominance." Id. (citation omitted). "Plaintiffs seeking class certification bear the burden of conducting a 'rigorous analysis' of the relevant laws of the states at issue, particularly when the claims involve plaintiffs from multiple jurisdictions." Id. (internal citations omitted). There is no dispute that the elements of a breach of contract claim for all fourteen states covered in both class actions are "materially the same" in each state, Glasner, D. 130-1 at 11 (citing Glasner, D. 100 at 9-11); Fassina, D. 115-1 at 11 (citing Glasner, D. 71 at 10-11); see Glasner, D. 139-4 at 31-34; Fassina, D. 124-4 at 31-34; see also Generation Changers Church, 693 F. Supp. 3d at 815.[7]  In support of their class certification motion, Plaintiffs provide the Court with state law surveys on three issues: (1) labor depreciation, Glasner, D. 128-11; Fassina, D. 113-12; (2) contract interpretation, Glasner, D. 128-12; Fassina, D. 113-13; and (3) prejudgment interest, Glasner, D. 128-13; Fassina, D. 113-14.

> (1)    State laws regarding labor depreciation do not vary in a manner that defeats predominance

---

[7] See Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001); Am. West Bank Members, L.C. v. State, 342 P.3d 224, 230-31 (Utah 2014); Young v. Grand Canyon Univ., Inc., 57 F.4th 861, 869 (11th Cir. 2023); Mortera v. State Farm Fire & Cas. Co., 561 F. Supp. 3d 684, 690 (S.D. Miss. 2021); Meyers v. Livingston, Adler, Pulda, 11 Meiklejohn & Kelly, P.C., 87 A.3d 534, 540 (Conn. 2014); Vill. of Kirkland v. Kirkland Props. Holdings Co., LLC I, 2023 IL 128612, ¶ 46; Lucarell v. Nationwide Mut. Ins. Co., 152 Ohio St. 3d 453, 463 (Ohio 2018); Old Republic Aerospace Inc. v. Louisville Aviation, LLC, No. 2023-cv-0111-MR, 2024 WL 4996722, at *3 (Ky. Ct. App. Dec. 6, 2024); Custom Built Homes v. G.S. Hinsen Co., Inc., No. 9511-cv-00513, 1998 WL 960287 (Tenn. Ct. App. Feb. 2, 1998); S. Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995); USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n. 21 (Tex. 2018); Pagoudis v. Keidl, 988 N.W.2d 606, 612 (Wis. 2023); LO NG Pharmacy Corp. v. Express Scripts, Inc., 747 F. Supp. 3d 1203, 1208 (E.D. Mo. 2024); Cole v. Amazon.com Servs. LLC, 765 F. Supp. 3d 1154, 1164 (W.D. Wash. 2025).

Plaintiffs provide multistate surveys that, they argue, establishes that twelve of the combined fourteen States-at-Issue (Alabama, Arizona, Illinois, Kentucky, Mississippi, Ohio, Tennessee, Maryland, Missouri, Texas, Washington and Connecticut), pursuant to either case law or statute, do not permit labor depreciation where there is no provision in an insurance policy that expressly permits the practice when calculating ACV payments under the RCLD methodology. Glasner, D. 130-1 at 11 (citing Glasner, D. 128-11); Fassina, D. 115-1 at 11 (citing Fassina, D. 113-12). Defendants, however, contend that Arizona, Illinois and Tennessee are the only states where the highest state court has addressed the issue, Glasner, D. 139-4 at 32 n.38; see Fassina, D. 124-4 at 31 n.39, and that for the remaining eleven states: (1) Alabama, Maryland, Connecticut, Kentucky, Mississippi and Ohio have no authoritative sources on point, (2) Missouri and Texas have conflicting authorities, (3) Utah and Wisconsin have not addressed the issue, and (4) Washington had not addressed the issue for a portion of the class period, Fassina, D. 124-4 at 31-32; see Glasner, D. 139-4 at 31-32.

As to Alabama, Maryland, Kentucky, Mississippi and Ohio, Defendants note that Plaintiffs fail to provide authoritative sources of state law in their surveys. See Glasner, D. 128-11 at 2; Fassina, D. 113-12 at 2. Instead, Plaintiffs provide decisions by federal courts, including this Court, state insurance department bulletins and a Connecticut statute. Id. Although it is true that the "[p]rimary" sources of authoritative law for a state are "the plainly expressed holdings of the highest court of [the state]," Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997), "decisions of federal courts attempting to discern state law" and "non-binding state regulatory guidance . . . are relevant to the *Erie* analysis," Generation Changers Church, 693 F. Supp. 3d at 817. Here, this Court has previously undertaken *Erie* analyses for Alabama and Maryland under which the Court concluded that where an insurer's definition of ACV is ambiguous, the policy

does not permit labor depreciation under the laws of those states.  Fassina, D. 71 at 19-21.  This conclusion is sufficient to establish Alabama's and Maryland's law on this issue.  See Allstate Ins. Co. v. Fougere, 79 F.4th 172, 182 (1st Cir. 2023) (explaining that "[w]here . . . on-point authority from the highest state court is unavailable . . . [a court's] task is to vaticinate how that court likely would decide the issue . . . employ[ing] the same method and approach that the state's highest court would use") (quoting In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 274 (1st Cir. 2014) (quoting González–Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)).  As to Mississippi, Kentucky and Ohio, Plaintiffs rely on Circuit decisions and state insurance department bulletins to establish that these states do not allow labor depreciation where a policy is ambiguous. Glasner, D. 128-11 at 2; Fassina, D. 113-12.  Although, as Defendants note, insurance bulletins are indeed "nonbinding guidance," Glasner, D. 139-4 at 32; Fassina, D. 124-4 at 32, the Court concludes the Fifth and Sixth Circuits' analysis of Mississippi's, Kentucky's and Ohio's laws, respectively, sufficient to establish that these states do not permit labor depreciation where a policy's definition of ACV is ambiguous.  See Mitchell, 954 F.3d at 705-07; see also Fassina, D. 71 at 10-11 (concluding same as to standing).

As to Texas, as previously explained as to standing, Fassina, D. 71 at 14-16, although Defendants present a decision from a federal district court in Texas that is "seemingly at odds" with Plaintiffs' proffered decisions, Fassina, D. 124-4 at 32 (citing Tolar v. Allstate Tex. Lloyd's Co., 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (suggesting that labor costs may be depreciable from ACV payments); see Fassina, D. 113-12 at 2-3, "Defendants do not identify . . . Texas state appellate authorities holding that labor depreciation is unambiguously allowed where an insurance policy does not expressly permit the practice," Fassina, D. 71 at 15.  Further, this Court has undertaken an Erie analysis of Texas law in a related case under which the Court concluded that

"Texas law does not unambiguously allow labor depreciation absent contract language expressly permitting the practice." Stanley v. Am. Econ. Ins. Co., No. 24-cv-10622-DJC, 2025 WL 509498, at *7 (D. Mass. Feb. 14, 2025); see Fassina, D. 71 at 15 (recognizing same). As to Missouri, Defendants rely upon "conflicting" cases that precede both the Missouri Court of Appeals' decision in Franklin v. Lexington Ins. Co., 652 S.W.3d 286, 303 (Mo. Ct. App. 2022) (holding that "[i]n the absence of an express policy provision that allows for it, labor does not fall within that which can be depreciated when an insured is entitled to an ACV payment") and the federal district court's decision in Brown v. State Farm Fire & Cas. Co., No. 23-cv-04002-MDH, 2023 WL 5599630, at *3 n.3 (W.D. Mo. Aug. 29, 2023) (holding that the "plain language [of Franklin] establishes without ambiguity that labor may not be depreciated under any Missouri insurance policy that fails to specifically define ACV or depreciation as inclusive of labor depreciation"). See Fassina, D. 124-4 at 32. In light of these decisions, the Court concludes that Plaintiffs have established that Maryland, Mississippi, Missouri, Kentucky and Ohio law do not unambiguously allow labor depreciation absent contract language expressly permitting the practice. Thus, there is no meaningful variation in the manner for which these states approach the labor depreciation issue.

> (2)     For states that have not addressed the issue of labor depreciation, state laws regarding insurance policy interpretation also do not vary in a manner that defeats predominance

Plaintiffs concede that this question remains open in Utah and Wisconsin. Fassina, D. 113-12 at 3; see Glasner, D. 128-11 at 3. Further, while Plaintiffs cite Conn. Stat. §§38a-307, 38a-308 (2023) defining depreciation under a RCLD formula as "a decrease in value of real property over a period of time due to wear and tear," this statute relates to "the standard form of fire insurance policy" in Connecticut and thus leaves the issue open as to general property insurance. Glasner,

D. 128-11 at 3.   Likewise, while Plaintiffs note that Washington currently prohibits labor depreciation pursuant to statute, <u>Fassina</u>, D. 113-12 at 3 (citing WAC 284-20-010(4)), Defendants note that for the portion of the class period from September 2021 to January 1, 2022, before the Washington regulation prohibited labor depreciation, "the status of labor depreciation was undecided in Washington."  <u>Fassina</u>, D. 124-4 at 32; <u>see</u> <u>Fassina</u>, D. 111 at 3 (asserting a class period for Washington policyholders "with a date of loss from September 12, 2021 through the present"); WAC 284-20-010(4) (noting that regulation became effective on January 1, 2022). Plaintiffs' contract interpretation survey, however, establishes that these states "recognize the general principle that ambiguities in an insurance policy should be construed against the insurer," <u>Glasner</u>, D. 100 at 11 (citing <u>Utah Farm Bureau Ins. Co. v. Crook</u>, 980 P.2d 685, 687 (Utah 1999); <u>Conn. Ins. Guar. Ass'n v. Fontaine</u>, 900 A.2d 18, 24 (Conn. 2006)); <u>Fassina</u>, D. 71 at 13 (citing <u>Utah Farm Bureau Ins. Co.</u>, 980 P.2d at 687; <u>Hirschhorn v. Auto-Owners Ins. Co.</u>, 809 N.W.2d 529, 535 (Wis. 2012); <u>see</u> <u>Fassina</u>, D. 113-13 (citing <u>Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha</u>, 882 P.2d 703, 713 (Wash. 1994)).   These states' laws on insurance policy interpretation further conform with the remaining six states' approaches of resolving ambiguities in insurance policies by construing them against the insurer.  <u>Glasner</u>, D. 128-12 at 2-6; <u>Fassina</u>, D. 113-13 at 2-7.

Moreover, although Defendants attack Plaintiffs' sources of authoritative state law for the labor depreciation issue, <u>Glasner</u>, D. 139-4 at 31-32; <u>Fassina</u>, D. 124-4 at 31-32, Defendants fail to develop an argument that the state laws regarding the issue of labor depreciation actually diverge in a manner that overcomes predominance, <u>id.</u>  The Court concludes that the state laws for the fourteen states at issue regarding labor depreciation and insurance policy interpretation do not vary in a manner that defeats predominance.  Relatedly, Defendants' contention that variations in policy

language amongst the insurers' policies complicate the analysis of how states address this issue, <u>Glasner</u>, D. 139-4 at 32; <u>Fassina</u>, D. 124-4 at 32, fails. Defendants themselves acknowledge that "[a]lthough the precise language varies depending on the version of the policy form at issue, each policy contains a 'loss settlement' provision that requires Liberty to pay the RCV amount for covered repairs" and that "[t]hese provisions drive a multistep claims-adjustment process." <u>Glasner</u>, D. 139-4 at 10-11; <u>Fassina</u>, D. 124-4 at 10-11. The only policy language variation Defendants identify is that some of the challenged policies define ACV while others do not. <u>Glasner</u>, D. 139-4 at 32; <u>Fassina</u>, D. 124-4 at 32. As explained above, it appears that the states will approach the language under each of the policies at issue similarly as to whether the policy language unambiguously permits labor depreciation at the ACV stage.

For the aforementioned reasons, the predominance requirement is met.

### 5. *Rule 23(b)(3) Superiority*

A putative class seeking certification under Rule 23(b)(3) also bears the burden of showing that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four factors within this inquiry: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." <u>Id.</u> The Court considers the alternatives to a class action, conscious that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." <u>Amchem</u>, 521 U.S. at 617 (quoting <u>Mace v. Van Ru Credit Corp.</u>, 109 F.3d 338, 344

(7th Cir. 1997)) (internal quotation marks omitted).  This inquiry, thus, ensures that litigation by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Id. at 615 (internal citation and quotation marks omitted).

Superiority is satisfied.  Plaintiffs contend that a class action is superior because the Court "can resolve claims for thousands of putative class members simply by resolving the predominating liability question."  Glasner, D. 130-1 at 20; Fassina, D. 115-1 at 20.  The Court agrees that a class action lawsuit here would be the better option.  See In re Pharm. Indus. Average Wholesale Price Litig., 252 F.R.D. at 107.  Plaintiffs also highlight the "negative value" nature of the claims at issue, Glasner, D. 130-1 at 20-21; Fassina, D. 115-1 at 20-21, which has been found by other courts certifying a class to litigate this exact issue as a compelling rationale for finding superiority.  See Mitchell, 327 F.R.D. at 564; Hicks, 965 F.3d at 463-64; see also Smilow, 323 F.3d at 41 (noting that "[t]he core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation").  Plaintiffs have established superiority.  Defendants rely upon the same appraisal argument to contest superiority as raised as to predominance, Glasner, D. 139-4 at 35-36; Fassina, D. 124-4 at 34-36, which the Court likewise finds does not defeat superiority.

Accordingly, the superiority requirement is satisfied.

For the aforementioned reasons, the Plaintiffs have met their burden under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) and the Court certifies the respective putative classes.

### 6.    *Certifying the Classes*

Fed. R. Civ. P. 23(c)(1)(B) requires the class certification order to "define the class and the class claims, issues or defenses" and must appoint class counsel under Fed. R. Civ. P. 23(g).  As

mentioned above, the Glasner Plaintiffs proposed their class definition, Glasner, D. 126 at 2, as did the Fassina Plaintiffs, Fassina, D. 111 at 2. In accordance with the Court's analysis above, the Court certifies the classes as defined by Plaintiffs. The class claims and issues shall consist of those raised in Plaintiffs' respective SACs and specifically consist of those claims and issues that support the Glasner Plaintiffs' Counts I-II, Glasner, D. 101 ¶¶ 97-115, and the Fassina Plaintiffs' Counts I and III, Fassina, D. 72 ¶¶ 110-20, 126-32.[8] Pursuant to Fed. R. Civ. P. 23(g) and for the reasons discussed above, the Court appoints Joseph Snodgrass, Jonathan M. Feigenbaum, Erik D. Peterson, and J. Brandon McWherter as class counsel in both actions. For the Glasner class, the Court appoints Glasner, the Seeleys, the Alis and Larsen as class representatives. Glasner, D. 126 at 4. For the Fassina class, the Court appoints Fassina, Edelen, Black and the Dobbs as class representatives. Fassina, D. 111 at 4.

The Court now turns to Defendants' summary judgment motions as to the individual breach of contract and declaratory judgment claims of the RCV Plaintiffs.

### C.    **Defendants' Motions for Summary Judgment**

#### 1.    *Breach of Contract Claim*

With respect to their individual breach of contract claims, the RCV Plaintiffs allege that their insurers breached their insurance policies by depreciating labor costs from their ACV payments. Glasner, D. 101 ¶¶ 97-108; Fassina, D. 72 ¶¶ 110-20; see id. ¶¶ 121-25. The parties agree that Arizona law governs the Dobbs' and Larsen's claims, Illinois law governs the Alis' claim, Ohio law governs the Seeleys' claim and Maryland law governs Black's claim. Glasner, D. 135 at 9-10; Fassina, D. 120 at 8; Fassina, D. 127 at 3-4 see Glasner D. 142 at 17. "Where both

---

[8] Count II of the Fassina Plaintiffs' SAC asserts a duplicative "individual" breach of contract claim. Fassina, D. 72 ¶¶ 121-25. To the extent the Fassina Plaintiffs seek certification as to Count II, that motion is denied.

parties agree on the proper substantive law to be applied, there is generally no need to engage in further choice-of-law analysis." Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F. Supp. 3d 15, 19 (D. Mass. 2015). But even if the parties did not consent to those respective states' laws, the insurance policies at issue covered property located in Arizona, Illinois, Ohio and Maryland, respectively, those states, therefore, have the most significant relationship to the contract and their laws apply. See Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec., 450 F. Supp. 3d 20, 31 (D. Mass. 2020). Under Maryland law, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor, 776 A.2d at 651. Under Arizona, Illinois and Ohio law the essential elements of a breach of contract claim are: (1) a valid contract; (2) the plaintiff performed; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. Vill. of Kirkland, 2023 IL 128612, ¶ 46; Lucarell, 152 Ohio St. 3d at 463; Young, 57 F.4th at 869. As to each Plaintiff, Defendants move for summary judgment on the grounds that they have failed to establish breach and damages.[9]

a)    The RCV Plaintiffs Have Established Breach

---

[9] Contrary to Plaintiffs' argument, Glasner, D. 142 at 6-9; Fassina, D. 127 at 7-10, Defendants' partial summary judgment motions do not seek an advisory opinion. Although "[c]ourts generally refuse to entertain motions for partial summary judgment on damages where a party's liability has not yet been determined," Stormo v. State National Insurance Company, No. 19-cv-10034-FDS, 2021 WL 4973835, at *2 (D. Mass. Oct. 26, 2021) (collecting cases), "'[a] court may grant summary judgment as to damages following a determination on liability,'" id. at 2 n.3 (citing City of New York v. Golden Feather Smoke Shop, Inc., No. 8-cv-03966-CBA-JMA, 2013 WL 3187049, at *33 (E.D.N.Y. June 20, 2013) (emphasis omitted)). Here, contrary to Plaintiffs' claim that "[Defendants'] motion does not seek to resolve whether [Defendants] breached their policy forms," Glasner, D. 142 at 6 (emphasis omitted); Fassina, D. 127 at 7 (emphasis omitted), Defendants challenge both the breach element, Glasner, D. 135 at 10-14; Fassina, D. 120 at 8-11, and the damages element, Glasner, D. 135 at 14-16; Fassina, D. 120 at 11-13, of the RCV Plaintiffs' breach of contract claims and having considered the briefing and argument from both parties, the Court addresses both matters here.

The RCV Plaintiffs allege that their respective insurers owed them a contractual duty "to pay [them] the labor necessary to return damaged property to its *status quo ante*" at the ACV stage, Glasner, D. 101 ¶ 103; Fassina, D. 72 ¶ 116; see id. ¶ 123, and that their insurers breached this duty by "withholding labor from [their] ACV payments under the RCLD methodology," id. Under each of their respective laws, a defendant breaches a contractual duty when he fails to perform or tender performance as the contract required. See Nat'l City Bank of Cleveland v. Erskine & Sons, 158 Ohio St. 450, 461 (1953); Graham v. Asbury, 540 P.2d 656, 657 (1975); Dynamic Metal Indus., Inc. v. Larsen Mfg., LLC, 2023 IL App (1st) 230894-U, ¶ 38; Taylor, 776 A.2d at 651. Defendants contend that the RCV Plaintiffs cannot establish breach as a matter of law because their insurers' payment obligation was "determined after [the RCV Plaintiffs] actually repaired their homes, and the amount of the payment obligation was based on what was actually and necessarily incurred in the actual repair work" which their insurers fulfilled by paying the RCV Plaintiffs' requested RCV "in full." Glasner, D. 135 at 10-13; Fassina, D. 120 at 8-11.

As noted above, Arizona, Illinois, Ohio and Maryland have adopted substantially similar approaches for interpreting insurance policies. See Glasner, D. 128-12 at 2-5; Fassina, D. 113-13 at 2-3. "The interpretation of an insurance contract is a question of law to be determined by the Court." Sparks v. Republic Nat. Life Ins. Co., 647 P.2d 1127, 1132 (1982) (citation omitted); see Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill. 2d 90, 108 (1992); Sharonville v. Am. Emps. Ins. Co., 109 Ohio St. 3d 186, 187 (2006); U.S. Life Ins. Co. in City of New York v. Wilson, 18 A.3d 110, 119 (Md. Ct. Spec. App. 2011). When analyzing an insurance policy, Arizona, Illinois, Ohio and Maryland "accord words . . . their plain and ordinary meaning, examining the policy 'from the viewpoint of an individual untrained in law or business.'" Walker v. Auto-Owners Ins. Co., 517 P.3d 617, 620 (Ariz. 2022) (citation omitted); see Sproull v. State Farm Fire

47

& Cas. Co., 2021 IL 126446, ¶ 19 (Ill. 2021); Gomolka v. State Auto. Mut. Ins. Co., 70 Ohio St.

2d 166, 173 (1982); Pac. Indem. Co. v. Interstate Fire & Cas. Co., 302 Md. 383, 388 (1985).  "If

a policy is subject to 'conflicting reasonable interpretations,' it is ambiguous."  Walker, 517 P.3d

at 620 (quotation omitted); see Sproull, 2021 IL 126446, ¶ 19; Lager v. Miller-Gonzalez, 120 Ohio

St. 3d 47, 50 (2008); Sullins v. Allstate Ins. Co., 667 A.2d 617, 619 (1995).  "[S]uch ambiguity

will be construed against the insurer."  Sparks, 647 P.2d at 1132 (citation omitted); see Sproull,

2021 IL 126446, ¶ 19; Sharonville, 109 Ohio St. 3d at 187; see also Sullins, 667 A.2d at 619

(noting that while "Maryland does not follow the rule, adopted in many jurisdictions, that an

insurance policy is to be construed most strongly against the insurer . . . if no extrinsic or parol

evidence is introduced, or if the ambiguity remains after consideration of the extrinsic or parol

evidence that is introduced, it will be construed against the insurer as the drafter of the instrument")

(quotation marks and quotations omitted).

Larsen's, the Alis', Black's and the Dobbs' policies state that for residences, "[their

respective insurer] will pay no more than the [ACV] of the damage until actual repair or

replacement is complete" and that "[o]nce actual repair or replacement is complete, [their

respective insurer] will settle the loss according to the [RCV provisions]."  Glasner, D. 136-1 at

98-99, 106-07; Glasner, D. 136-2 at 16-17, 24-25; Fassina, D. 121-1 at 22, 30, 82-83.  Similarly,

the Seeleys' policy states that "[c]overed property losses are settled . . . at replacement cost" and

"[i]f the cost to repair or replace is $2,500 or more, [Safeco Indiana] will pay the difference

between [ACV] and replacement cost only when the damaged or destroyed property is repaired or

replaced."  Glasner, D. 136-1 at 34-35, 51.  As Plaintiffs note, Glasner, D. 143 at 3; Fassina, D.

128 at 3, this language is characteristic of a "traditional" two-step loss settlement process under

which the RCV Plaintiffs' insurers are first obligated to pay ACV and then obligated to pay the

difference between ACV and RCV only if an insured makes repairs or replacements in accordance with its RCV provision, see Arnold, 2020 WL 6882748, at *1 (recognizing two-step settlement process whereby "[u]ntil actual repair or replacement is completed, [the insurer] will pay only the actual cash value" and "[w]hen the repair or replacement is actually completed [the insurer] will pay the covered additional amount [the insured] actually and necessarily spend[s] to repair or replace"); Hicks, 965 F.3d at 466 (McKeague, J., concurring in the judgment in part and dissenting in part) (recognizing two-step loss settlement process under similar language).[10]  This construction accords with language under these provisions describing RCV as "additional liability" beyond ACV.  See Glasner, D. 136-1 at 107; Glasner, D. 136-2 at 25; Fassina, D. 121-1 at 31, 91; see also Sullins, 667 A.2d at 619 (noting that "insurance policies, like other contracts, are construed as a whole to determine the parties' intentions") (citation omitted); Sparks, 647 P.2d at1134 (same); Outboard Marine Corp., 154 Ill. 2d at 108 (same); Gomolka, 70 Ohio St. 2d 166, 172 (same).  To the extent there is any ambiguity, communications from the RCV Plaintiffs' respective insurers and testimony from Liberty's claim adjusters support this interpretation, Glasner, D. 136-1 at 78-80 (issuing the Seeleys ACV and informing them that they can request recoverable depreciation "[o]nce the repairs are completed or the items have been replaced"); id. at 79; Glasner, D. 136-2 at 57 (same as to LMPIC and Larsen); Fassina, D. 128-4 at 2-3 (same as to Black); Brown Dep., Glasner, D. 143-3 at 2-3 (testifying that ACV is the minimum payment an insured is due and that an insured may recover costs depreciated at the ACV stage if they later make a RCV claim); Bailey Dep., Glasner, D. 128-7 at 7 (same).  See Sullins, 667 A.2d at 619 (noting that "[w]here terms are ambiguous, extrinsic and parol evidence may be considered to ascertain the intentions of the

---

[10] Under the Seeleys' policy, the RCV claim must also equal $2,500 or more, Glasner, D. 136-1 at 34-35, 51, which is undisputed here, Glasner, D. 143 ¶ 9; Glasner, D. 152 ¶ 9.

parties"); <u>Tillotson & Wolcott Co. v. Scottdale Mach. & Mfg. Co.</u>, 23 Ohio App. 399, 400 (1926) (recognizing same); <u>Gomez v. Bovis Lend Lease, Inc.</u>, 2013 IL App (1st) 130568, ¶ 14 (2013) (same); <u>Taylor v. State Farm Mut. Auto. Ins. Co.</u>, 175 Ariz. 148, 152 (1993) (same).

Defendants do not offer a construction of the above portion of the RCV Plaintiffs' loss settlement provisions, but instead point to a latter portion of the provisions and contend that the RCV Plaintiffs' insurer's payment obligation was "determined after [the RCV Plaintiffs] actually repaired their homes, and the amount of the payment obligation was based on what was actually and necessarily incurred in the actual repair work" because the RCV Plaintiffs did not "disregard the replacement cost loss settlement provisions and make a claim under this policy . . . on an [ACV] basis."  <u>Glasner</u>, D. 135 at 10-13; <u>Fassina</u>, D. 120 at 8-11.  As an initial matter, the parties do not appear to dispute that the RCV Plaintiffs made a claim on a replacement cost basis or that their claim is governed by the replacement cost loss settlement provisions.  Moreover, it is undisputed that the two-step process is what occurred in the RCV Plaintiffs' cases, as their insurers first issued them an ACV payment, <u>Glasner</u>, D. 143 ¶¶ 5, 19, 33; <u>Glasner</u>, D. 152 ¶¶ 5, 19, 33; <u>Fassina</u>, D. 128 ¶¶ 5, 19; <u>Fassina</u>, D. 137 ¶¶ 5, 19, and later issued them a RCV payment for recoverable depreciation, including depreciated labor costs, after they repaired their property, <u>Glasner</u>, D. 143 ¶¶ 10, 24, 38; <u>Glasner</u>, D. 152 ¶¶ 10, 24, 38; Fassina, D. 128 ¶¶ 10, 24; <u>Fassina</u>, D. 137 ¶¶ 10, 24. Having determined that the RCV Plaintiffs' respective insurers had a contractual duty to pay them the ACV of their claims, the Court turns to whether the RCV Plaintiffs' policies allowed their insurers to depreciate labor costs.

As to Larsen, the Alis and the Dobbs, Arizona and Illinois law do not permit depreciating labor from ACV payments under the RCLD methodology.  <u>Walker</u>, 517 P.3d at 623 (explaining that under Arizona law, "if a policy adopts the RCLD methodology for determining actual cash

value, . . . the insurer is precluded from depreciating labor when determining the actual cash value of the covered loss"); Sproull, 2021 IL 126446, ¶ 16 (explaining that under Illinois law, "depreciation may not be applied to the intangible labor component" under the RCLD methodology). As it is undisputed that LMPIC and LIC adopted the RCLD methodology to determine Larsen's, the Alis' and the Dobbs' ACV payments, Glasner, D. 143 ¶¶ 8, 22, 36; Glasner, D. 152 ¶¶ 8, 22, 36; Fassina, D. 128 ¶¶ 8, 22; Fassina, D. 137 ¶¶ 8, 22, and depreciated "estimated future repair labor" from their ACV payments, Glasner, D. 143 ¶¶ 23, 37; Glasner, D. 152 ¶¶ 23, 37; Fassina, D. 128 ¶ 9; Fassina, D. 137 ¶ 9, Larsen, the Alis and the Dobbs have established a breach of their respective contract's terms under Arizona law and Illinois law. See Walker, 517 P.3d at 623; Sproull, 2021 IL 126446, ¶ 16.

As to the Seeleys, their policy defines ACV to include certain personal property, "wood fences, outdoor antennae and awnings," and certain "structures that are not buildings," and requires that these enlisted items be paid "at actual cash value at the time of loss not exceeding the amount necessary to repair or replace." Glasner, D. 136-1 at 35. As previously noted, "the Seeleys' insurance policies do not define ACV so as to permit labor depreciation," Glasner, D. 100 at 5 n.1, nor, more specifically, labor costs associated with removing damaged roofing materials from steep and high roofs, see Glasner, D. 143 ¶¶ 8-9; Glasner, D. 152 ¶¶ 8-9. Even assuming *arguendo*, without deciding, that Safeco Indiana's ACV definition reasonably could be construed as encompassing depreciation for labor costs, it could also be reasonably construed to reach only physical deterioration. See Arnold v. State Farm Fire & Cas. Co., 268 F. Supp. 3d 1297, 1312 (S.D. Ala. 2017) (explaining that "a reasonable insured could reasonably understand that labor does not depreciate"). Construing this ambiguity in the Seeleys' favor, as is required under Ohio law, Sharonville, 109 Ohio St. 3d at 187, this definition of ACV does not include depreciation of

anticipated labor costs.  The Seeleys' policy thus did not permit Safeco Indiana to depreciate labor costs at the ACV stage.  See Cranfield v. State Farm Fire & Cas. Co., 798 Fed. App'x 929, 930 (6th Cir. 2020) (concluding that "an Ohio insurer may not deduct the cost of labor depreciation pursuant to an [ACV] insurance policy that does not expressly provide for such deductions") (citing Perry, 953 F.3d at 423-24).  It is undisputed that Safeco Indiana adopted the RCLD methodology to determine the Seeleys' ACV payment, Glasner, D. 143 ¶ 8; Glasner, D. 152 ¶ 8, and depreciated labor costs associated with "removing damaged roofing materials from the Seeleys' steep and high roof," Glasner, D. 143 ¶¶ 8-9; Glasner, D. 152 ¶¶ 8-9.  The Seeleys thus have established breach under Ohio law.

As to Black, as previously explained and incorporated here, Fassina, D. 71 at 20-21, because Black's policy lacks a definition for ACV or replacement cost, "the Court is not convinced that a 'reasonably prudent layperson' would be able to discern that ACV unambiguously encompasses the depreciation of labor costs," id. at 21 (citing Sullins, 667 A.2d at 619), nor does either party argue that there is no ambiguity as to whether LM may depreciate labor at the ACV stage, see Fassina, D. 120 at 8-11; Fassina, D. 127 at 15-17.  As no extrinsic evidence has by introduced by either party to address the meaning of ACV, the ambiguity of ACV must be resolved in Black's favor.  Sullins, 667 A.2d at 619.  Construing the definition of ACV in this manner, this definition of ACV does not include depreciation of anticipated labor costs.  Black's policy thus did not permit LM to depreciate labor costs at the ACV stage.  As there is no dispute that LM depreciated $8,014.56 of estimated "future repair labor" from Black's ACV payment, Fassina, D. 128 ¶ 23; Fassina, D. 137 ¶ 23, Black has established breach under Maryland law.

Defendants contend, however, that because the RCV Plaintiffs subsequently recovered the RCV of their claims "in full," they cannot establish breach.  Glasner, D. 135 at 10-13; Fassina, D.

120 at 8-11.  In support of their argument, Defendants rely upon <u>Cortinas</u>.  In <u>Cortinas</u>, a plaintiff filed a claim with her insurer for property damage and was issued an ACV payment which withheld labor costs.  <u>Cortinas</u>, 2025 WL 233589, at *6.  The plaintiff later recovered RCV and subsequently sued her insurer for breach of contract alleging that her insurer breached her insurance policy by depreciating labor costs from her ACV payment.  <u>Id.</u>  Citing <u>Stiers</u>, the court concluded that "[the insurer]'s payment of RCV to [the plaintiff] . . . 'moot[s] any [initial] ACV underpayment,' because 'the actual costs of repair cap[ped] . . . [its] obligation[s].'"  <u>Id.</u> at *8 (citing <u>Stiers v. State Farm Ins.</u>, No. 11-cv-437, 2012 WL 2405982, at *4-5 (E.D. Tenn. June 25, 2012)); <u>see Stiers</u>, 2012 WL 2405982 at *5 (concluding that because plaintiffs "were paid on a replacement cost basis . . . [the insurer's] payment obligation is the amount they actually and necessarily spent to complete the repairs" and as plaintiffs were paid "the difference between the ACV payment and the actual repair costs, a full replacement cost payment will render moot any ACV underpayment").[11] Defendants argue that <u>Cortinas</u> and <u>Stiers</u> are dispositive here because, similar to those cases, the RCV Plaintiffs' insurer's payment obligation was determined not when they issued their "initial" ACV payments, but after the RCV Plaintiffs repaired their home, and because the RCV Plaintiffs were paid RCV "in full," AEIC satisfied its contractual obligations under the policy, regardless of whether the "initial" ACV payment was deficient.  <u>Glasner</u>, D. 135 at 10-13; <u>Fassina</u>, D. 120 at 8-11; <u>see Glasner</u>, D. 136 ¶¶ 10, 25, 40; <u>Fassina</u>, D. 121 ¶¶ 10-11, 23-24.  Alternatively, Defendants contend that even if their subsequent RCV payments did not moot any alleged ACV underpayment,

---

[11] Defendants' reliance on <u>Dow</u> is misplaced as <u>Dow</u> does not address the issue of whether payment of RCV moots a defendant's obligation to pay ACV according to a specific methodology.  <u>See Dow v. Safeco Ins. Co. of Am.</u>, No. 23-cv-2641, 2025 WL 1110742, at *2 (9th Cir. Apr. 15, 2025) (holding that insurer did not violated contract under Montana law because insurer was not required to pay ACV based on actual repair costs as determined following RCV repair).

the RCV Plaintiffs cannot establish damages for the same reason.  <u>Glasner</u>, D. 135 at 14-16; <u>Fassina</u>, D. 120 at 11-13.

Given that, as noted above, the focus of the RCV Plaintiffs' breach of contract challenge is their insurers' alleged "withholding of labor costs in calculating ACV payments due pursuant to the RCLD methodology and in the absence of a labor depreciation permissive form," not the underpayment of ACV, <u>Glasner</u>, D. 101 ¶¶ 97-108; <u>Fassina</u>, D. 72 ¶¶ 110-20; <u>see id.</u> ¶¶ 121-25, the Court is not persuaded that their insurers' subsequent RCV payment shields them from the RCV Plaintiffs' breach challenge.  <u>See</u> <u>Schroeder</u>, 146 F.4th at 578 (explaining that in similar breach of contract cases, some "courts have defined the term 'actual cash value' using a formula, then held that the insurer had a contractual duty to calculate actual cash value in accordance with this formula, independent of a contractual duty to pay insureds the actual cash value of losses") (citing <u>Stuart</u>, 910 F.3d at 373-76; <u>Hicks</u>, 965 F.3d at 456, 459; <u>Mitchell</u>, 954 F.3d at 705-07, 710). As explained below, Defendant's RCV payment argument instead finds better footing in its challenge to the damage element of the RCV Plaintiffs' breach of contract claim.  <u>See</u> <u>Glasner</u>, D. 135 at 14-16; <u>Fassina</u>, D. 120 at 11-14; <u>see also</u> <u>Cortinas</u>, 2025 WL 233589, at *6 (discussing <u>Stiers</u> in the context of plaintiffs' inability to prove damages).  Accordingly, even with their subsequent RCV payments, the RCV Plaintiffs' insurers breached their contractual duty to pay the ACV of the Stanleys' insurance claim by depreciating labor costs from their ACV payments.

For the aforementioned reasons, the RCV Plaintiffs have established breach.

b)    <u>Black's Claim Succeeds As a Matter of Law</u>

As Plaintiffs argue, <u>Fassina</u>, D. 127 at 4, 13 n.13, and Defendants concede, <u>Fassina</u>, D. 120 at 13, under Maryland law, "[i]t is not necessary that the plaintiff prove damages resulting from the breach," to prevail on a breach of contract claim, <u>Taylor</u>, 776 A.2d at 651.  Accordingly, having

established breach, Black's breach of contract claim succeeds as a matter of law and Defendants are not entitled to summary judgment as to same.

As to the remaining RCV Plaintiffs, the Court turns to the damages element of their breach of contract claims.

> c)    Larsen, the Seeleys, the Alis and the Dobbs Have Not Established Damages

Larsen, the Seeleys, the Alis and the Dobbs allege that they have incurred damages from their respective insurer's breach "in the amount of the unpaid portion of their claims," Glasner, D. 101 ¶ 105; see Fassina, D. 72 ¶ 124, as well as "interest on the amounts improperly withheld, for the time-period of withholding," Glasner, D. 101 ¶ 80; Fassina, D. 72 ¶ 93. Defendants contend that they cannot establish damages because they received full RCV, which covered the labor costs depreciated at the ACV stage, i.e., the unpaid portion of their claims, Glasner, D. 135 at 14-15; Fassina, D. 120 at 11-13; see Glasner, D. 143 ¶¶ 10, 24, 38; Glasner, D. 152 ¶¶ 10, 24, 38; Fassina, D. 128 ¶¶ 10-11, 24-25; Fassina, D. 137 ¶¶ 10-11, 24-25, and that they cannot establish contractual damages with prejudgment interest, Glasner, D. 135 at 15-16; Fassina, D. 120 at 13-14.

Plaintiffs contend that, despite being paid RCV "in full," Larsen, the Alis, the Seeleys and the Dobbs have not been fully paid for "outstanding principal" because their RCV payments must first be applied to the prejudgment interest that accrued on the withheld depreciated labor costs during the period between the issuance of the ACV payment and the issuance of the RCV payment pursuant to the "United States Rule." Glasner, D. 142 at 17-19 (citing Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship, 350 P.3d 826, 832 (Ariz. Ct. App. 2015) (explaining that under the United States Rule, payments intended to resolve a debt are to be applied "first to unpaid interest due and thereafter to the principal debt'") ; Halloran v. Dickerson, 679 N.E.2d 774, 779 (Ill. Ct. App. 1997) (same); Evans v. Buckeye Union Ins. Co., 640 N.E.2d 1153, 1155 (Ohio

Ct. App. 1993) (same)); <u>Fassina</u>, D. 127 at 17-19 (citation omitted). "The problem with [Plaintiffs]' argument is that it is only a 'judgment' that 'earns prejudgment interest.'" <u>Cortinas</u>, 2025 WL 233589, at *7 (citation omitted); <u>Kahlig Enters., Inc. v. Affiliated FM Ins. Co.</u>, No. 23-cv-50144, 2024 WL 1554067, at *4 (5th Cir. Apr. 10, 2024) (explaining that plaintiff "cannot maintain a claim for prejudgment interest against [an insurer] [when] there is no judgment against [the insurer]"). Thus, "[the RCV Plaintiffs'] argument that [their insurers]'s RCV payment to [them] should first go to satisfying the accrued prejudgment interest before satisfying the principal—thereby leaving a remainder of owed but unpaid principal—necessarily fails" as "[t]here was no prejudgment interest to be satisfied in the absence of a judgment." <u>Cortinas</u>, 2025 WL 233589, at *7. The RCV Plaintiffs, therefore, cannot establish damages with their "outstanding principal" argument.

Plaintiffs' reliance upon this Court's rulings on Plaintiffs' motions to amend in these cases, <u>Glasner</u>, D. 100 at 13-14; <u>Fassina</u>, D. 71 at 22-24, and other cases recognizing that a claim for prejudgment interest is not "moot under Article III," <u>Glasner</u>, D. 142 at 9-13, 15-16 (citing <u>Hicks</u>, 965 F.3d at 463; <u>Stuart</u>, 91 F.3d at 377; and <u>others</u>); <u>Fassina</u>, D. 127 at 11-12, 16 (same), is misplaced at the merits stage. As these cases recognize, the question of whether Plaintiffs satisfy Article III's injury-in-fact requirement is distinct from the question of whether Plaintiffs have brought a meritorious breach of contract claim, namely whether Plaintiffs can ultimately prove damages. <u>See Hicks</u>, 965 F.3d at 463 (rejecting defendants' standing challenge as to plaintiffs who received RCV; explaining that "ultimately, '[w]hether some Plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question'") (quoting <u>Stuart</u>, 910 F.3d at 377). As to Defendants' motion for partial summary judgment, the Court considers whether Larsen, the Alis, the Seeleys and the Dobbs have

satisfied the elements of their breach of contract claim as a matter of law and concludes they have failed to establish damages.

At oral argument, Plaintiffs raised, for the first time, that under Arizona, Ohio and Illinois law, "upon proof of a breach, even in the absence of damages, [Larsen, the Seeleys, the Alis and the Dobbs are] entitled to nominal damages at the least." Glasner, D. 159 at 54; Fassina, D. 144 at 54. As the First Circuit has "consistently held . . . except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." United States v. Pizarro-Berrios, 448 F.3d 1, 5 (1st Cir. 2006); see Race v. Cambridge Health All., No. 23-cv-10143-JEK, 2025 WL 2076623, at *8 n.10 (D. Mass. July 23, 2025) (concluding that argument not included in summary judgment briefing and raised for the first time at oral argument is waived). As Defendants note, Glasner, D. 163 at 2; Fassina, D. 148 at 1, Plaintiffs failed to raise this argument in their oppositions, see Glasner, D. 142 at 9-22; Fassina, D. 127 at 17-22. Indeed, the term "nominal damages" appears nowhere in the Glasner brief, Glasner, D. 142 at 9-22, and is discussed in the Fassina brief only as to Black's claim, Fassina, D. 127 at 4, 7 n.7, 13 n.13.[12] Plaintiffs' failure to raise a nominal damages argument in their opposition to summary judgment briefs does not present an extraordinary circumstance, see Ministeri v. Reliance Standard Life Ins. Co., 523 F. Supp. 3d 157, 174 (D. Mass. 2021), and although the Court granted leave for Defendants to respond to this portion of Plaintiffs' oral

---

[12] Plaintiffs' post-hearing argument that their respective prayers for relief, which do not request "nominal damages," Glasner, D. 101 at Prayer for Relief ¶¶ 1-9; Fassina, D. 72 at Prayer for Relief ¶¶ 1-9, is nonetheless inclusive of nominal damages is unavailing as, even if, arguendo, without deciding, it is reasonable to construe Plaintiffs' SACs to include a request for nominal damages, Plaintiffs cannot rest on their pleadings to meet their burden on summary judgment. See Anderson, 477 U.S. at 256; see also McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 n.7 (1st Cir. 1991) (noting that "[c]ourts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion").

argument claim in a post-hearing supplemental briefs, Glasner, D. 163; Fassina, D. 148, "we deem the issue to have been waived," see Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir. 1990) (citing Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico, 906 F.2d 25, 40-41 (1st Cir. 1990) (concluding that although opposing party "voluntarily responded to [a] newly-raised issue in a 'surreply' brief which we granted leave to file . . . in order not to encourage endless rounds of briefing, we still find the issue waived")).  The Court thus will not consider Plaintiffs' nominal damages argument as to Larsen's, the Seeleys', the Alis' and the Dobbs' individual claims.

For the aforementioned reasons, Larsen's, the Seeley's, the Alis and the Dobbs' breach of contract claim fails as a matter of law.  Defendants are entitled to summary judgment as to same.

### 2.    Declaratory Judgment

The RCV Plaintiffs also seek "a declaration that Defendants' property insurance contracts prohibit the withholding of labor costs . . . when adjusting losses under the RCLD methodology" on an individual basis.  Glasner, D. 101 ¶ 113; Fassina, D. 72 ¶ 130.  Defendants move for summary judgment on the grounds that they lack standing and their claims are duplicative of their breach of contract claims.  Glasner, D. 135 at 16-20; Fassina, D. 120 at 14-18.  As explained above, Defendants are not entitled to summary judgment based on their standing argument to the extent that the RCV Plaintiffs seek a declaration only as against their respective insurers pursuant to the respective state laws governing their individual claims.

As to their duplicative claim argument, Defendants are entitled to summary judgment on this basis as to the RCV Plaintiffs.  "Pursuant to the Declaratory Judgment Act, a federal district court may, '[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought.'"  Transpac Marine, LLC v. Yachtinsure Servs., Inc., 655 F. Supp. 3d 18, 28 (D.

Mass. 2023) (alteration in original) (quoting 28 U.S.C. § 2201(a)).  "[A] district court has

'complete discretion in determining whether and when to entertain'" a claim for declaratory

judgment.  Id. (internal quotation marks omitted) (quoting Zurich Am. Ins. V. Watts Regul. Co.,

796 F. Supp. 2d 240, 246 (D. Mass. 2011)).  Courts in this Circuit have generally exercised this

discretion to deny such claims where the declaratory judgment claim was duplicative of other

claims in the complaint.  See Martorana v. Progressive Direct Ins. Co., No. 22-cv-10613-DJC,

2023 WL 2465639, at *9 (D. Mass. Mar. 10, 2023) (collecting cases that denied claims requesting

declaratory judgment for being duplicative of substantive claims in the complaint).  As a general

matter, a claim is duplicative where it relies upon the same facts and legal arguments, see Guilfoile

v. Shields Pharmacy, LLC, No. 16-cv-10652, 2021 WL 4459515, at *5 (D. Mass. Sept. 29, 2021),

and "'provides [the plaintiff] with no further remedy,'" see Priddy v. ZOLL Med. Corp., No. 23-

cv-10575-IT, 2025 WL 975234, at *16 (D. Mass. Mar. 31, 2025) (citing Young v. Wells Fargo

Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013)).

    Here, the RCV Plaintiffs seek "a declaration that Defendants' property insurance contracts

prohibit the withholding of labor costs . . . when adjusting losses under the RCLD methodology."

Glasner, D. 101 ¶ 113; Fassina, D. 72 ¶ 130.  In similar fashion, their breach of contract claims

alleges that "Defendants breached their contractual duties to pay Plaintiffs . . . the labor necessary

to return damaged property to its status quo ante by withholding labor from their respective ACV

payments under the RCLD methodology."  Glasner, D. 101 ¶ 103; Fassina, D. 72 ¶ 116.  As the

legal and factual bases for the RCV Plaintiffs' declaratory judgment claims are identical to their

breach of contract claims, these claims are duplicative.  See Guilfoile, 2021 WL 4459515, at *5.

Further, whereas, in resolving Defendant's summary judgment challenge to the RCV Plaintiffs'

breach of contract claims, the Court has concluded that their policy insurance contracts do not unambiguously permit labor depreciation under Maryland, Arizona, Illinois and Ohio law, "[p]leading an additional cause of action provides [them] with no further remedy." <u>Young</u>, 717 F.3d at 237. The Court thus declines to exercise its discretion to entertain the RCV Plaintiffs' declaratory judgment claims. <u>See</u> <u>Guilfoile</u>, 2021 WL 4459515, at *5 (allowing summary judgment on declaratory judgment claim where claim is duplicative of breach of contract claim). Accordingly, Defendants are entitled to summary judgment on the RCV Plaintiffs' individual declaratory judgment claims.

## VI.    Conclusion

For these reasons, the Court ALLOWS the <u>Glasner</u> Plaintiffs' motion for class certification, <u>Glasner</u>, D. 126, ALLOWS the <u>Fassina</u> Plaintiffs' motion for class certification, <u>Fassina</u>, D. 111, ALLOWS the <u>Glasner</u> Defendants' motion for partial summary judgment, <u>Glasner</u>, D. 134, and ALLOWS the <u>Fassina</u> Defendants' motion for partial summary judgment in part as to the Dobbs' breach of contract and the Dobbs and Black's declaratory judgement claims and DENIES same in part as to Black's breach of contract claim, <u>Fassina</u> D. 119.


**So Ordered.**

/s Denise J. Casper
Chief United States District Judge
